KATHY P. MOONAN ET AL. *v.* THE CLARK WELLPOINT CORPORATION

KING, C. J., ALCORN, THIM, RYAN and LOISELLE, Js.

Argued December 3, 1969—decided February 10, 1970

*Sanford J. Plepler,* with whom, on the brief, were *Rolland Castleman* and *Lewis Segal,* for the appellants (plaintiffs).

*John F. Scully,* with whom, on the brief, was *David T. Ryan,* for the appellee (defendant).

RYAN, J. This action was brought on behalf of the plaintiff Kathy Moonan, a minor, by her mother and next friend, to recover damages for personal injuries alleged to have been sustained because of the negligence of the defendant. In a second count, the child's mother seeks to recover damages for expenditures for medical, surgical and hospital care required as a result of the injuries. The jury returned a verdict for the defendant, and, following the court's refusal to set aside the verdict, the plaintiffs have appealed to us from the judgment rendered.

The plaintiffs' assignments of error relate solely to the trial court's instructions to the jury. The correctness of the charge is determined by the claims of proof of the parties. Practice Book § 635; *Levett v. Etkind,* 158 Conn. 567, 569, 265 A.2d 70. The plaintiffs made the following claims of proof: On July 17, 1960, the date of the occurrence complained of, the plaintiff Kathy P. Moonan, aged fifteen months, resided with her parents, Russell Moonan and the plaintiff Marilyn Moonan, in Bolton. At that time, Moonan was employed in Bolton by the defendant, the Clark Wellpoint Corporation, which manufactured pumps and associated equipment used in lowering water tables. The defendant's premises consisted of a single wood frame building, which had a main entrance on the south and a sliding door on the east, and adjacent land. The building contained pumping equipment, machinery for the manufacture and repair of such equipment, office furniture and furnishings, and miscellaneous supplies. Outside of the building on the south were pipe and pipe-fitting racks, and on the north pipes were placed on the ground. Prior to July 17, 1960, the plaintiff Kathy Moonan and her sister, Linda, aged five, had visited the defendant's

premises during both regular and overtime working hours, and, although Kathy was sometimes accompanied by both parents, at times she was accompanied only by her father. On occasion, children of employees would accompany their mothers to the premises to provide their fathers with transportation home, and these children at times wandered about the premises, entered the shop building and played in the parking area adjacent to the shop building and in the field north of the shop building. William S. Clark, president of the corporation, usually was on the premises each day and was generally aware of the activities there. He knew that the children of employees would visit the premises and was present when numerous children, including the plaintiff Kathy Moonan, were on the premises.

The plaintiffs claimed to have also proved: The defendant company had no rule forbidding children from visiting the premises, and Clark neither objected to nor advised against Moonan's bringing his children to the premises. On July 17, 1960, the defendant used "Oakite L.S.D." (Liquid Steam Detergent) in its business and had a drum of it in the shop which it purchased from the manufacturer, Oakite Products, Inc. Oakite L.S.D. is a heavy duty alkaline cleaner, consisting of 25 percent liquid caustic soda (sodium hydroxide), 5 percent surfactants, 5 percent chelating agents, 2.5 percent sodium silicate and 62.5 percent water. It is highly caustic or corrosive to human tissues, and the manufacturer recommended to its customers that it not be allowed to come in contact with human tissue or skin. The defendant through Clark and Moonan had actual knowledge of the nature of Oakite L.S.D. A drum of Oakite L.S.D. was on the floor inside the north wall of the building. In July, this chemical was used

with a steam cleaning machine, which was kept in the yard to the east of the defendant's building, in the vicinity of the large sliding door. For convenience, the defendant's employees would pour the Oakite L.S.D. from the drum into an uncovered two-quart glass jar provided by Clark. The jar was kept at all times uncapped, and no rule had been promulgated requiring the employees to keep it covered. Oakite L.S.D. when left exposed to the air, crystallizes and has a milky white appearance. Moonan was a superintendent of the defendant corporation, and his duties included, inter alia, the promulgation of safety rules, regulations and procedures. In April, 1960, approximately one week after his appointment as superintendent, Moonan established an unwritten rule which was explained to those employees of the defendant employed in July, 1960. The rule required all employees to keep and store the container into which they customarily poured the Oakite L.S.D. on a cabinet shelf inside the building immediately after use. He provided the cabinet for the purpose of storing Oakite L.S.D. and other dangerous substances to avoid recurrence of injuries to employees who had been burned by this chemical prior to July 17, 1960, and to prevent injuries to persons coming on the premises. On Friday, July 15, 1960, the glass jar was used by the defendant's employees outside the building in conjunction with the operation of the steam cleaning machine.

The plaintiffs made the further claims of proof: The defendant had a seasonal business requiring Moonan to work overtime, and, when he went to the defendant's premises on Sunday, July 17, 1960, at approximately 7 p.m. to wait for a truck which he was to load with material to be delivered at a job

site the next day, he was acting as the agent and employee of the defendant, in furtherance of corporate business, and within the scope of his authority. The Moonan home was about one-half mile from the shop, and Moonan brought his wife and the two children with him so that his wife could assist him in measuring pipe, as she had done on prior occasions. After all of them had entered the building through the main entrance, Moonan got some tape and chalk, left the building through the sliding door and proceeded to walk toward a pipe rack. As he left, he observed the jar which he had last seen on Friday while it was being used by the employees of the defendant in conjunction with the operation of the steam cleaning machine lying on the ground on its side near the sliding door, and he recognized it as the jar used on Friday for measuring Oakite L.S.D. On prior occasions, the defendant's employees had left the jar lying on the ground near the steam cleaning machine in contravention of the rule requiring employees to return the jar to the cabinet shelf after use. Moonan walked past the jar and did not remove it from its position on the ground. As he left the building his children followed him as he expected them to do, and Marilyn Moonan assumed that the children were going to play in the yard as they had done on prior occasions. Kathy followed her father through the large sliding door and out of the building. Upon reaching the pipe rack north of the building, Moonan heard Kathy cry out and immediately ran toward her. Within a few seconds after Kathy left the building, Marilyn Moonan heard her cry out and immediately ran toward her. When they arrived at her side, Kathy was crouched over the jar in the pathway which runs parallel to the easterly wall of the building about two to three feet from the side of

the building. She was bleeding from the mouth and then commenced vomiting. In addition, there was a white foamy substance about her lips and mouth. A foam results whenever Oakite L.S.D. is mixed with water. At approximately 8:30 p.m., Moonan returned to the defendant's premises and observed that the glass jar contained approximately two tablespoons of Oakite L.S.D. Kathy had swallowed some Oakite L.S.D. All injuries sustained by Kathy resulted from her ingestion of Oakite L.S.D. on July 17, 1960, at approximately 7 p.m.

The defendant made the following claims of proof: Russell Moonan, a salaried employee of the defendant, was not paid to work on weekends, and Clark did not know that he was working on the day in question. At approximately 7 p.m., Moonan and his family went to the plant and went inside the building, where Moonan got some tape and chalk from his desk. He then went outside while his wife and children remained inside. They were alone on the premises. The Moonan children were sometimes on the premises when they came with their mother to pick up their father and when Moonan took his children on the premises after working hours. They usually played in the driveway in front of the building and would pick flowers. Moonan would not allow either child to play on the premises without his supervision and never thought they would be wandering about the premises unsupervised. Clark never saw the employees' children wandering about the premises unsupervised. Kathy Moonan was fifteen months old and able to walk on July 17, 1960, and her father did not know that she was outside the building and never saw her with the jar. Before using the steam cleaner, the jar would be filled with Oakite L.S.D. and then emptied into the cleaner.

Clark did not see the jar on July 16, 1960, when he worked at the plant, and Moonan stated on October 10, 1960, that he did not notice the jar prior to the accident. At one time Russell Moonan was a party plaintiff to this action. Moonan did not tell anyone that he saw the jar on the ground outside the building on July 17, 1960, and he did not know that anything was in the jar on July 17, 1960. He took the jar into his possession on July 17, 1960, but never found out what was in it. When Moonan got to Kathy after hearing her scream, he noticed that her lip was bleeding as if it had been cut, and, although the jar did not have a cut lip, Moonan had previously stated that the jar had a cut lip. Moonan never prepared safety regulations, and he never discussed any regulations or rules ever established by him or any regulation which required that the jar be put on a shelf after use. The cabinet was located inside the building in which the Oakite container and other materials were stored.

The plaintiffs assign error in the trial court's instruction to the jury that the status of the minor plaintiff was that of a gratuitous licensee rather than that of an invitee. The plaintiffs claim that the question of the child's status was one of fact for the jury to determine. "Ordinarily, the status of one who sustains injury while upon the property of another is a question of fact." *Roberts* v. *Rosenblatt,* 146 Conn. 110, 112, 148 A.2d 142. There is nothing in the claims of proof to support the plaintiffs' contention that the child was an invitee or a business visitor. The child occupied the status of a social guest of her father, who was an employee of the defendant, and there was no dispute on the facts essential to a determination of the minor plaintiff's status. Under the circumstances a legal question

was presented. *Roberts* v. *Rosenblatt,* supra; note, 78 A.L.R.2d 107, 115. The trial court was correct in instructing the jury that the plaintiff child was a gratuitous licensee. *Lubenow* v. *Cook,* 137 Conn. 611, 614, 79 A.2d 826.

The plaintiffs assign error in the failure of the trial court to instruct the jury in accordance with their request to charge on the right of the jury to draw reasonable inferences from facts proven. After a lengthy recital of facts, the request stated the following: "I instruct you that it would be a reasonable inference, if you find the aforementioned facts proven, that an employee or employees of the defendant corporation left the jar on the ground and neglected to return it to the shelf at the close of work on Friday night." The charge which was requested would make the inference mandatory rather than permissive. The trial court was correct in refusing to give the request to charge as submitted by the plaintiff. *Penna* v. *Esposito,* 154 Conn. 212, 214, 224 A.2d 536.

The plaintiffs also assign error in the charge on the ground that the court failed to instruct the jury on the duty of an owner or possessor of land to a minor child in accordance with our decisions in *Wolfe* v. *Rehbein,* 123 Conn. 110, 113, 193 A. 608, and *Greene* v. *DiFazio,* 148 Conn. 419, 171 A.2d 411. In the *Wolfe* case, we adopted the rule which is stated in what is now the Restatement (Second), 2 Torts § 339. It subjects the possessor of property to liability for harm caused to young children trespassing thereon by a condition which he maintains if (a) he knows or should know that young children are likely to trespass; (b) the condition is one of which he knows or should know and which he realizes or should realize involves an unreasonable risk of seri-

ous injury to such children; (c) the children because of their immaturity do not discover the condition or realize the risk involved in intermeddling in it or coming within the area made dangerous by it; and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to the children. *Greene* v. *DiFazio,* supra, 422.

The court charged the jury as follows: "Ordinarily an owner of land owes no duty to such a [gratuitous] licensee to keep his premises in a safe condition because the licensee must take the premises as he finds them, including any dangers arising out of their condition. This rule applies to an infant child as well as to an adult licensee, and a landowner cannot be held to be an insurer of the safety of young children. An owner or possessor of land, such as the defendant in this case, is liable for bodily harm caused to a gratuitous licensee by a condition thereon, if, but only if, he knows of the condition, realizes it involves unreasonable risk to the licensee, and has reason to believe that the licensee will not discover the condition and realize the risk and invites or permits the licensee to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe or to warn the licensee of the condition and the risk involved therein. In order for the defendant to be charged with knowledge of a defective condition on its premises, that is, not reasonably safe for a reasonably-to-be-anticipated use, the plaintiff must prove actual knowledge of the precise defect claimed to be dangerous. It is not enough to prove actual knowledge of conditions naturally productive of the dangerous condition and subsequently, in fact, producing it. The owner of land is under no duty to inspect or police his land to discover whether

such conditions exist, and he becomes subject to liability only when he knows or has reason to know that they do exist and that they are dangerous." Later, after discussing various other matters, the court charged: "Of course, any business or any manufacturing concern involving tools, appliances, and chemicals, involves risk of harm to children of tender years who have a propensity for inquiring into and meddling with conditions on land without understanding or appreciating the danger, but the test to be applied is whether the defendant knew the condition involved an unreasonable risk to the minor as a licensee. Reasonable care does not require one to guard against eventualities, unless they are reasonably foreseeable. And in this connection, it is noted there is no evidence that the defendant knew that the plaintiff licensee would be on the premises without the supervision of parents."

Shortly after the jury had retired to deliberate, the court received a request in writing to review the statement of law on gratuitous licensees. The court responded as follows: "I am going to give that to you in summary form, but I want you to realize this was a part of a much longer over-all charge on liability, but this is the rule in capsule form as I gave it to you during my original instructions. The owner or possessor of land is liable for bodily harm caused to a gratuitous licensee by a condition thereon if, but only if, he knows of the condition, realizes that it involves an unreasonable risk to the licensee, and has reason to believe that the licensee will not discover the condition and realize the risk and invites or permits the licensee to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe or to warn the licensee of the condition and the

risk involved therein." The plaintiffs excepted on the same grounds as they had to the original charge.

The plaintiffs urge that the court's instructions established a less demanding standard of care for a child licensee than that owed to a child trespasser. The trial court's charge was predicated upon our decision in *Schiavone* v. *Falango,* 149 Conn. 293, 179 A.2d 622. In that case a two-year-old child licensee fell from an outside stairway and was injured. We held that the rule of *Wolfe* v. *Rehbein,* 123 Conn. 110, 113, 193 A. 608, was not applicable. "There was nothing about this staircase, its construction or state of repair which constituted a dangerous condition. . . . The landowner cannot be held to be an insurer of the safety of young children who suffer injury from a normally innocuous condition on his property. To impose liability in such cases would cause an intolerable burden and one which could not be sustained through any process of logical reasoning." *Schiavone* v. *Falango,* supra, 298.

In the instant case, the condition complained of was far from innocuous. The chemical which caused the injuries to the child was extremely dangerous. Under the plaintiffs' claims of proof there was evidence that employees' children came upon the defendant's land and that these children wandered about the premises, entered the shop building and played in the parking area and adjacent to the shop building and in the field to the north of the shop building where they picked flowers. The president of the defendant corporation usually visited the premises each day, and he was aware generally of activities at the premises. He knew that employees' children would visit the premises and was present on numerous occasions when children including the

plaintiff Kathy Moonan were there. There was no rule prohibiting employees' children from visiting the premises, and Clark never objected to it. The defendant by and through its officers and employees had actual knowledge of the dangerous nature of Oakite L.S.D. The chemical was used by the defendant in conjunction with a steam cleaning machine, which during July, 1960, was kept outside of the building in the yard to the east of the building in the vicinity of the large sliding door. The defendant's employees would pour the chemical into a two-quart glass jar, which was kept at all times uncapped. Russell Moonan, as superintendent of the company, established a rule that the jar should be replaced in a cabinet for the specific purpose of avoiding the recurrence of injuries to employees of the defendant corporation who had been burned by Oakite L.S.D. prior to July 17, 1960, and to avoid injuries to persons coming on the premises. On Friday, July 15, 1960, the glass jar was used by the defendant's employees outside the building at the steam cleaning machine. On prior occasions, the defendant's employees had left the jar lying on the ground near the steam cleaning machine in disobedience of the rule requiring that it should be returned to the cabinet. On Sunday, July 17, Moonan saw the jar about three feet from the sliding door. When Kathy cried out, she was crouched over the jar in the pathway which runs parallel to the easterly wall of the building about two to three feet from the side of the building. This was in the area of the steam cleaning machine.

From these facts there was a permissible inference that the jar with some of the chemical in it had been left there by the defendant's employees two days previously. Knowledge of those employees is

of course the knowledge of the defendant corporation. There was evidence from which the jury could find that the condition thus created and maintained was one of which the defendant knew or should have known and of which it realized or should have realized involved an immediate risk of serious injury to young children who, because of their immaturity, would not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it. The fourth condition of the rule requires no discussion. It was obviously present.

We approve the rule as stated in the Restatement: "CHILD LICENSEES AND INVITEES In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee. . . . Comment: . . . b. Where the child is not upon the land as a trespasser, but is a licensee or an invitee, the possessor of the land is no less obligated to anticipate and take into account his propensities to inquire into or meddle with conditions which he finds on the land, his inattention, and his inability to understand or appreciate the danger, or to protect himself against it. Thus the rules stated in § 339, and the Comments and Illustrations to that Section, are equally applicable where the child is a licensee or an invitee." Restatement (Second), 2 Torts § 343 B. The status and rights of a child who is a gratuitous licensee are not less than they would have been had he been a trespasser. So far as there is language in *Schiavone* v. *Falango*, 149 Conn. 293, 296, 179 A.2d 622, to the contrary, it can no longer be regarded as a correct statement of the law. On the claims of proof with the inferences

which were permissible for the jury to draw, the plaintiffs were entitled to a charge under the doctrine set forth in *Wolfe* v. *Rehbein,* 123 Conn. 110, 113, 193 A. 608, and *Greene* v. *DiFazio,* 148 Conn. 419, 171 A.2d 411. Certainly a licensee, under the circumstances of the present case, is entitled to at least as much protection as a trespasser, and the trial court was in error in failing to so instruct the jury. It is unnecessary to discuss the remaining assignments of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.