Robert F. Mei, Administrator (Estate of William G. Mei) *v.* Alterman Transport Lines, Inc.

Alcorn, House, Thim, Ryan and Shapiro, Js.

Argued March 4—decided April 8, 1970

*William F. Gallagher,* with whom, on the brief, was *Frederick S. Moss,* for the appellant (plaintiff).

*Alfred F. Celentano,* for the appellee (defendant).

RYAN, J. This is a negligence action brought by the plaintiff administrator seeking damages for the death of his decedent resulting from a collision on the New Jersey Turnpike between an automobile operated by the decedent and a tractor-trailer truck

owned by the defendant and operated by its agent, servant and employee. The parties have stipulated that the issue of liability is governed by Connecticut common law. The jury found the issues for the defendant, and, on the refusal of the trial court to set aside the verdict, the plaintiff has appealed to this court from the judgment rendered.

The plaintiff assigns error in the charge of the trial court. The correctness of the charge is determined by the claims of proof of the parties. Practice Book § 635; *Moonan* v. *Clark Wellpoint Corporation*, 159 Conn. 178, 180, 268 A.2d 384. The plaintiff offered evidence and claimed to have proved the following facts: On April 21, 1967, the plaintiff's decedent, William G. Mei, was traveling south on the New Jersey Turnpike in Edison Township, New Jersey, where he was involved in an accident with a tractor-trailer truck owned by the defendant and operated by an employee of the defendant, Hubert A. Abercrombie, who is not a party to this litigation. The accident occurred in the early afternoon of Friday, April 21, 1967, which was a clear, dry day. At the site of the accident, there are three lanes for traffic in a southerly direction, each twelve feet wide, and a shoulder of approximately the same width. The road was straight and level. The decedent was driving in the center lane and was tailgated for a long distance by the defendant's tractor-trailer truck. The truck was so close to the decedent's car that when the decedent looked in his rearview mirror only the radiator of the truck was visible to him and when he looked in his sideview mirror he could not see past the truck because it was so close that it blocked his vision. The decedent was traveling at a speed of fifty to fifty-five miles an hour and had been traveling at this speed for some

time prior to the accident. He was unable to increase his speed because of traffic ahead of him. Because the truck was following the decedent so closely, he became annoyed and nervous and wanted to get out of the way of the truck. When he saw an opportunity to pull into the left lane, he turned on his blinker light, indicating his intention to turn left, and began to edge over towards the left lane. While he was doing so with his signal light on, he heard three loud blasts of a horn from a vehicle in the left lane and was forced to return to the center lane. As he attempted to do so the left front of the truck struck the right rear of his automobile, causing it to go into a spin. After the decedent's car came to rest facing east in the center lane, the left front of the defendant's truck struck the left side of the decedent's car. The truck continued thereafter and stopped on the right-hand shoulder of the southbound lanes. The automobile operated by the decedent was one month old and in excellent condition. It was totally demolished in the accident. As a result of injuries received in the collision the decedent died July 5, 1967.

The plaintiff assigns error in the refusal of the trial court to charge on the doctrine of emergency in accordance with his request. In its instructions to the jury, the court made no reference to the emergency doctrine. On an examination of the plaintiff's request to charge, it is apparent that portions of it would have improperly invaded the province of the jury by requiring them, rather than permitting them, to find that an emergency existed if they found that the truck was tailgating the decedent's car so closely as to cause, in a reasonably prudent driver, a fear for his own safety. The trial court was not required to follow such a request.

*Moonan* v. *Clark Wellpoint Corporation,* supra,
186. Another portion of the request to charge
properly defined an emergency. "Generally, error
cannot properly be predicated upon a refusal of
the court to charge as requested in a certain
paragraph, although it contains correct proposi-
tions of law, if it also includes others which are
not, or contains objectionable matter which can-
not properly be charged." *Urbansky* v. *Kutinsky,* 86
Conn. 22, 28, 84 A. 317; *Bernard* v. *Ribner,* 151 Conn.
670, 673, 201 A.2d 658. "As a rule, to entitle a party
to a new trial for the refusal of the court to charge
as requested, the request should be so framed that
the court can properly comply with it. But there
may be exceptions to that rule, and there should be
an exception when the request relates to a material
and important feature of the case concerning which
it is clearly the duty of the court to instruct the jury
irrespective of the request. If in such cases the
court not only refuses to instruct them as requested,
but entirely omits all reference to the subject, there-
by leaving the jury to have, and to act upon, errone-
ous impressions of the law, we think the party is
entitled to a new trial, notwithstanding the imper-
fect manner of making the request. . . . [W]hile
it was not the duty of the court to charge precisely
as requested, yet it was its duty to respond to the
request by charging the jury correctly on that sub-
ject." *Seeley* v. *Litchfield,* 49 Conn. 134, 138. The
court's instructions to the jury omitted any refer-
ence to the emergency doctrine and the plaintiff took
no exception to the charge. The request to charge,
however, put the court on notice that the plaintiff
was requesting a charge on the emergency doctrine.
Under the circumstances, there was sufficient com-
pliance with the spirit of Practice Book § 252 to

warrant us in considering the propriety of the charge as given. See *Stavola* v. *Palmer,* 136 Conn. 670, 682, 73 A.2d 831.

The conduct of the plaintiff's decedent in the operation of his car was called into question by the special defense of contributory negligence. Although the application of the emergency doctrine does not alter the standard of care to be exercised, it is a factor to be considered in the evaluation of the decedent's conduct. In an emergency not due to his own negligence, one is not relieved of all obligations to exercise care but is required to exercise the care of an ordinarily prudent person acting in such an emergency. *Degnan* v. *Olson,* 136 Conn. 171, 177, 69 A.2d 642; *Puza* v. *Hamway,* 123 Conn. 205, 213, 193 A. 776. An emergency is but one of the circumstances shown in evidence which are to be considered by the trier in determining whether an operator exercised due care. *Pareles* v. *McCarthy,* 149 Conn. 238, 243, 178 A.2d 155. "The doctrine applies only in cases in which the operator is suddenly confronted by a situation not of his own making and has the opportunity of deciding rapidly between alternative courses of action." *Vachon* v. *Ives,* 150 Conn. 452, 455, 190 A.2d 601.

To require the giving of an instruction on the doctrine of sudden emergency in the instant case, there must be an adequate basis in the claims of proof to satisfy each of the following elements: (1) An emergency actually existed; (2) the perilous situation was not created by the plaintiff's decedent; and (3) the decedent, confronted with the emergency, chose the course of action which would or might have been taken by a person of reasonable prudence in the same or a similar situation. *Miller* v. *Porter,* 156 Conn. 466, 469, 242 A.2d 744.

The finding indicates that the decedent was followed so closely by the defendant's truck that he could see only the radiator of the truck in his rear-view mirror and in his sideview mirror he could not see past the truck because it blocked his vision; that the decedent became nervous because of the proximity of the truck and wanted to get out of its way; that he could not increase his speed owing to traffic ahead of him; that he signaled the turn to the left and tried to edge over into the left lane at which time he heard three loud blasts of a horn from a car in the left-hand lane; and that he then attempted to get back into the middle lane and was struck by the left front of the defendant's truck. On these claims of proof it would have been permissible for the jury to find that there was a sudden emergency which was not created by the decedent and that he chose the course of action which would or might have been taken by a reasonably prudent driver under the same circumstances. Despite the inadequacy of the plaintiff's request to charge, it was "sufficient to call the matter to the attention of the court, since the charge should have included instructions on this point, even in the absence of a request. *Foote* v. *E. P. Broderick Haulage Co.,* 123 Conn. 296, 299, 195 Atl. 191." *McDowell* v. *Federal Tea Co.,* 128 Conn. 437, 441, 23 A.2d 512; see also *Riley* v. *Connecticut Co.,* 129 Conn. 554, 559, 29 A.2d 759; *Iannucci* v. *Lamb,* 123 Conn. 142, 145, 193 A. 212; *Sellew* v. *Middletown,* 121 Conn. 331, 334, 185 A. 67; *Pietrycka* v. *Simolan,* 98 Conn. 490, 499, 120 A. 310.

The plaintiff also assigns error in a ruling by the trial court admitting certain testimony of a New Jersey police officer who investigated the accident. On direct examination by the defendant it was established that the officer had discussed with the dece-

dent and Hubert A. Abercrombie, the operator of the defendant's truck, how the collision occurred. Abercrombie is not a party to this action. The officer was asked to relate what Abercrombie had told him about the accident subsequent to its occurrence. The plaintiff objected on the ground that the answer would be hearsay. The defendant claimed that it was part of the res gestae because the statement was made at the scene of the accident and immediately after it occurred. The court inquired if the plaintiff's decedent was present. Upon receiving an affirmative answer, the court overruled the objection, and the plaintiff duly excepted to the ruling. The officer then testified that Abercrombie stated that he was proceeding south on the turnpike in the center lane at approximately fifty to fifty-five miles per hour; that all of a sudden he saw the car of the plaintiff's decedent go into a spin, coming to a stop across the road in the center lane; that he could not turn either to his right or his left because of vehicles in those lanes; and that he applied his brakes and struck the decedent's car. The statement was obviously hearsay and admissible only if it could be shown to be an exception to the hearsay rule.

"Most exceptions to the hearsay rule are permitted because it is believed that safeguards are present which at least approach those given by the opportunity for cross-examination existing where hearsay testimony is not involved." *Brown* v. *Blauvelt,* 152 Conn. 272, 275, 205 A.2d 773. The defendant urges that Abercrombie's statement was a spontaneous utterance admissible as part of the res gestae. "The factors to be considered in determining whether certain statements or declarations fall within this exception to the hearsay rule are set

forth in *Perry* v. *Haritos,* 100 Conn. 476, 484, 124 A. 44. The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation. The trial judge must decide, as a preliminary question, whether the declarant had an opportunity for deliberation and reflection and whether the utterance was a spontaneous one." *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 341, 160 A.2d 899. In the instant case the record fails to indicate how much time had elapsed between the accident and the conversation and whether the truck driver had had opportunity either to reflect upon the accident or to discuss it with others. No proper foundation was laid for the admissibility of his statement as a spontaneous utterance. The mere fact, as elicited by the question of the trial judge, that the statement was made in the presence of the plaintiff's decedent does not make the statement admissible as a tacit admission. In the absence of a proper foundation the statement was inadmissible. *Obermeier* v. *Nielsen,* 158 Conn, 8, 11, 255 A.2d 819.

There were conflicting versions as to how the accident occurred, and the issue of the credibility of witnesses was of vital importance. By admitting the testimony of the police officer as to what Abercrombie, the defendant's driver, said to him concerning the accident, the direct testimony of Abercrombie was corroborated by a prior consistent statement. "When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number

of repetitions of it. Such evidence would ordinarily be irrelevant and cumbersome to the trial; and is rejected in all Courts." 4 Wigmore, Evidence (3d Ed.) § 1124. "[T]he general rule is that a party cannot strengthen the testimony of his own witness by showing that he has made previous statements to the same effect as his testimony." *Palmer* v. *Hartford Dredging Co.,* 73 Conn. 182, 188, 47 A. 125; *Thomas* v. *Ganezer,* 137 Conn. 415, 417, 78 A.2d 539. The instant case does not fall within the exception to that rule wherein, as in *Thomas* v. *Ganezer,* supra, 418, evidence of prior statements consistent with a witness' testimony may be given in the discretion of the court and under appropriate circumstances after the introduction of an inconsistent statement.

The defendant urges in his brief that, even if the testimony was erroneously admitted, the ruling was harmless because Abercrombie's testimony at the trial was the same as that related by the police officer. We have held in numerous cases that, where the facts contained in testimony admitted into evidence by an erroneous ruling are established by other evidence, the ruling is harmless and does not constitute reversible error. *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21, 118 A.2d 798; see *Sondik* v. *Beth El Temple of West Hartford, Inc.,* 152 Conn. 712, 714, 207 A.2d 583. "The ultimate question in such a situation is whether the erroneous ruling of the court would have been likely to affect the result. *Guerrieri* v. *Merrick,* 145 Conn. 432, 435, 143 A.2d 644. It is true, of course, that the appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153; *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742; *Guerrieri* v. *Merrick,* supra, 434; *DeCarufel* v.

*Colonial Trust Co.,* supra." *Obermeier* v. *Nielsen,* 158 Conn. 8, 13, 255 A.2d 819. The police officer was an indifferent person, and his improperly admitted testimony may well have had an important, if not controlling, influence on the jury's determination of the credibility of the decedent's version of the accident in the light of the testimony of Abercrombie, an employee of the defendant and the operator of the defendant's truck. *Krupp* v. *Sataline,* 151 Conn. 707, 709, 200 A.2d 475. Under the circumstances disclosed, the ruling appears to be not only erroneous but probably harmful.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.