BRENDA NEAL ET AL. *v.* SHIELS, INC., ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

4

Argued November 9, 1973—decision released February 19, 1974

*Everett F. Fink,* for the appellants (named defendant and defendant Samuel Chester).

*William F. Gallagher,* with whom, on the brief, was *Cyril Cole,* for the appellees (plaintiffs).

LOISELLE, J. The plaintiff Brenda Neal, a minor, and her father, acting as next friend and for himself, brought this action to recover damages for

injuries suffered and expenses incurred and to be incurred, which were alleged to have been caused by the negligence of four defendants, Shiels, Inc., Samuel Chester, Edward Mansfield and Margherita Davidson. The jury returned a verdict for the plaintiffs, and the defendants Samuel Chester and Shiels, Inc., appealed. The defendants Mansfield and Davidson did not appeal. When in this opinion we refer to the defendants we refer only to Chester and Shiels, Inc., unless otherwise indicated.

The defendants assigned error in portions of the court's charge to the jury, and in the court's refusal to set aside the verdict. The merits of the assignments of error relating to the charge to the jury are determined by the claims of proof of the parties. Practice Book § 635; *Busko* v. *DeFilippo*, 162 Conn. 462, 464, 294 A.2d 510; *Levett* v. *Etkind*, 158 Conn. 567, 569, 265 A.2d 70. The claims of proof by the plaintiffs are as follows: On Monday, July 5, 1965, a clear, dry day, at 1 p.m., the defendant Mansfield was operating a Buick owned by the defendant Davidson easterly on Mather Street, a thirty-foot-wide street in Hartford. There were no cars in front of the defendant Mansfield as he proceeded easterly on Mather Street but there was traffic flowing in a westerly direction. Cars were parked to Mansfield's left, on the north side of the street. At that time a Mister Softee ice cream truck owned by the defendant Shiels, Inc., and operated by the defendant Chester was the only vehicle parked on the south side of Mather Street. The truck was parked on the wrong side of the road, facing west and the defendant Mansfield saw about fifteen to twenty children gathered around it. After pulling over to the side of the street to allow a westbound vehicle through, the defendant Mansfield started to

drive his car past the ice cream truck. When his car was approximately three-quarters of the way past the rear of the truck, he observed a child, the plaintiff, Brenda Neal, coming from behind the truck on his right and heard a thump. He stopped his car, got out and observed Brenda's mother pick up Brenda. He then drove the child and the mother to the hospital.

The Mister Softee truck involved is a one-ton Ford van, painted red, white and blue and decorated with decals of cones, shakes and sundaes. A sign, "Caution—Watch Out For Children," is on the rear of the truck and when the truck stops the amber lights on the right and left rear corners blink. To alert children and adults, the truck is equipped with a bell which emits a loud, sharp, gong-like sound. The driver never stops in any location when there are no customers. If customers appear the driver stops, sells his products and then moves on. The children and adults in the area are aware that they must get to the truck quickly because the truck might leave. The driver-salesman serves ice cream from inside of the truck to his customers who stand outside.

The neighborhood in the vicinity of the occurrence has a great number of children and is a thickly populated section. It is composed mostly of tenement houses. The defendant Chester was familiar with Mather Street, specifically with respect to the type of neighborhood and the numerous children in the area. Previous to the accident, Mister Softee trucks selling ice cream had appeared in the vicinity and on Mather Street.

Brenda Neal (called the plaintiff) lived with her family on the second floor of a tenement house on

the north side of Mather Street. Immediately prior to the accident, the plaintiff, age four, was playing with her sister Glendora, age six, in the back yard of their home, and their mother was upstairs. As the plaintiff and Glendora were playing, they heard the bells of the ice cream truck approaching the area and the plaintiff went out of the back yard onto the driveway at the side of the house toward the front of the house. Glendora then went upstairs to tell her mother that the plaintiff had gone out front because the mother had ordered the children not to cross the street.[1] The plaintiff went out to the front of her home and while there saw the ice cream truck

---

[1] At this point in their claims of proof, the plaintiffs claim that the plaintiff observed children gathered by the ice cream truck and crossed the street to it. This claim was attacked by the defendants, is unsupported by the evidence printed in the appendices and is stricken. Practice Book §§ 627, 628, 636, 718; *State* v. *Tropiano*, 158 Conn. 412, 415, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288. Two other paragraphs in the plaintiffs' offers of proof were also attacked by the defendants. These claims were: (1) while in front of her home, Brenda Neal "saw the ice cream truck across the street stopped for the purpose of selling ice cream"; and (2) "[f]or a time while the plaintiff Brenda Neal was in front of her home, she was so situated that the street separated her from the ice cream truck." These claims are based on testimony of the plaintiff's mother that she saw the Mister Softee ice cream truck and the plaintiff on the other side of the street before the Mansfield vehicle struck her daughter, and that Glendora had told her that the plaintiff had run across the street to the ice cream truck. In addition, the plaintiff's sister, Glendora, testified that the plaintiff "went around the front. Q. How did she get around the front? A. She went down—she went, you know—she heard the ice cream men truck around the front, and see then she ran around there; you know, she ran around the front. Q. Was it a private walk there or driveway or what? A. Driveway. Q. She went out in front? A. Yes." There was no objection to any of the answers given. Although the plaintiffs have not provided any explicit evidence that the street lay between the plaintiff and the ice cream truck, or that the plaintiff saw the ice cream truck, these claims of proof reasonably could be inferred from the evidence. *State* v. *Vars*, 154 Conn. 255, 258, 224 A.2d 744.

stopped across the street for the purpose of selling ice cream. For a time while the plaintiff was in front of her home, she was so situated that the street separated her from the ice cream truck. When Glendora came upstairs, her mother went down the front stairs and saw the truck parked across the street. As she was about to cross the street to get the plaintiff, she saw a car coming and waited for it to pass. While waiting, she saw the plaintiff begin to recross the street from the rear of the ice cream truck. She called to the plaintiff but the warning was too late and the child was struck and knocked to the pavement.

The defendants' claims of proof were: The defendant Chester did not sell any ice cream on Mather Street. After making sales on Brook Street he took a right on Mather Street following a Buick traveling at a high rate of speed; the traffic stopped on Mather Street and he also stopped in the line of traffic with the Buick immediately ahead of him; the cars ahead then proceeded on and he proceeded through Mather Street and turned right on Green Street. The defendant Chester did not see the plaintiff or know of her crossing the street or of her whereabouts prior to or at the time of the accident. The defendant Chester's employer, the defendant Shiels, Inc., had posted instructions in his truck directing him not to stop on Mather Street. No other operator employed by Shiels, Inc., was assigned a stop on that street. The defendant Chester was trained to serve ice cream only from the right side of the truck facing the curb and not to use the left window which faces the street. The operator of a Mister Softee truck has no way of knowing from which side of the street the customers come. The procedure followed by the

defendant Chester was to stop his truck, walk to the back of the truck to the serving area, open the window facing the curb and solicit business. In that position, he could not see anything through the window on the other side of the truck. When he did serve ice cream, he would have to turn around and in doing so, if he were looking out the window, he then could see out on the left side of the truck. The plaintiff's mother had not given her any money to buy ice cream and never had allowed the plaintiff to buy ice cream on her own.

Both sides had additional offers of proof, but those recited are sufficient to discuss the issues raised.

In its charge the court restricted the jury's consideration to three paragraphs of the plaintiffs' complaint. These allegations of negligence against the defendant Chester were as follows: "(6) (c) IN THAT he failed to warn the plaintiff, under the circumstances, of the approach of the defendant Davidson automobile; . . . (e) IN THAT he failed to stop the plaintiff from crossing at said time and place; (f) IN THAT he violated the ordinance 25.16 (1) [sic] of the city of Hartford relating to peddlers and vendors under the circumstances then and there existing." In relation to the first two allegations the court charged: "Paragraphs 6c and 6e are allegations of common law negligence, as I have defined that term for you. It is true and it is the law that where children are involved, if a person knew, or from facts within his knowledge should know, that the presence of children is to be expected, he is bound to anticipate it and exercise reasonable care to avoid injuring them. Conduct which may be careful in dealing with an adult may be careless

in dealing with a child. If the presence of children is to be anticipated, the care to be exercised is such as is reasonable, having in view the probability that children, because of their youth, will not discover the condition or realize the risk involved incumbent in the area made dangerous by it." The defendants claim that by submitting these two allegations of negligence to the jury and in charging as it did, the court in effect adopted the so-called Pied Piper doctrine.[2] In examining these two allegations of common-law negligence, neither can be construed as an application of a doctrine of absolute liability or of attractive nuisance.

The defendants further claim that liability cannot be founded upon ordinary negligence because there was no duty owed to the plaintiff as she was not a customer; because no duty attaches until the defendants knew of the plaintiff's presence; and, because the striking of the child by the defendant Mans-

---

[2] Some authorities have attached the label "Pied Piper" to the body of the case law imposing liability in situations analogous to the present appeal. Prosser, Torts (4th Ed. 1971) § 33, p. 173; *Sidders* v. *Mobile Softee, Inc.*, 19 Ohio Op. 2d 446, 448, 184 N.E.2d 115. The use of this name is unfortunate both because it implies that liability necessarily is based upon some special exception to common-law negligence and because it creates the impression that the courts have followed a unified approach. While some jurisdictions appear to have adopted special rules; *Schwartz* v. *Helms Bakery Limited*, 67 Cal. 2d 232, 430 P.2d 68 (extension of business invitee rule), *Landers* v. *French's Ice Cream Co.*, 98 Ga. App. 317, 106 S.E.2d 325 (violation of municipal ordinance); other states purport to uphold liability on the basis of a common-law duty to exercise reasonable care under the prevailing circumstances. *Mackey* v. *Spradlin*, 397 S.W.2d 33 (Ky. App.); *Thomas* v. *Goodies Ice Cream Co.*, 42 Ohio Op. 2d 147, 233 N.E.2d 876. No single analysis has received the endorsement of all the jurisdictions which have ruled for the plaintiff on this issue, but none of the cases cited by the defendant adopts a rule of strict liability or attractive nuisance.

field was an independent intervening cause. It is unquestioned that the plaintiff had no funds for a purchase from the defendants; that no evidence was offered to show that the defendant Chester knew of the plaintiff's presence at any time; and that the facts show that the immediate cause of the injuries suffered by the plaintiff was the contact with the car driven by the defendant Mansfield.

Our cases have attempted to safeguard children of tender years from their propensity to disregard dangerous conditions. It definitely has been established by frequent repetition of the statement that the degree of care required of children is "such care as may reasonably be expected of children of similar age, judgment and experience." *Marfyak* v. *New England Transportation Co.,* 120 Conn. 46, 50, 179 A. 9, and cases cited; *Greene* v. *DiFazio,* 148 Conn. 419, 424, 171 A.2d 411. As to the care required of others in relation to children, the same propensity of children has been taken into consideration in evaluating the negligence of these others. See *Scorpion* v. *American-Republican, Inc.,* 131 Conn. 42, 46, 37 A.2d 802. Although the attractive nuisance doctrine has never been adopted in this state; see *Wilmot* v. *McPadden,* 79 Conn. 367, 65 A. 157; the rule stated in Restatement, 2 Torts § 339, concerning trespassing children injured by a dangerous condition on an owner's land has been approved. *Wolfe* v. *Rehbein,* 123 Conn. 110, 113, 193 A. 608; *Greene* v. *DiFazio,* supra, 422. This approval has been extended, at least in part, to the revised version of this rule in Restatement (Second), 2 Torts § 339. *Moonan* v. *Clark Wellpoint Corporation,* 159 Conn. 178, 186, 268 A.2d 384. It is also established that an operator of a motor vehicle is bound to keep in mind the populous

character of the neighborhood, the likelihood of children being in the street and their characteristic lack of appreciation of danger. *Lederer* v. *Connecticut Co.*, 95 Conn. 520, 524, 111 A. 785; see also *Johnson* v. *Shattuck*, 125 Conn. 60, 64, 3 A.2d 229. This court, however, has continued to adhere to the principles of common-law negligence within its recognition that children require special consideration.

Where there is no legal duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence. *McDowell* v. *Federal Tea Co.*, 128 Conn. 437, 440, 23 A.2d 512, and cases cited; Prosser, Torts (4th Ed. 1971) §§ 30, 33, 53; 57 Am. Jur. 2d, Negligence, § 36. In other words, there is a distinction between liability arising from one's fault and the absence of liability for injury arising from another's misfortune. Restatement (Second), 2 Torts § 302 states: "A negligent act or omission may be one which involves an unreasonable risk of harm to another through . . . (b) the foreseeable action of the other, a third person, an animal, or a force of nature." Section 303 states: "An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the other." Connecticut law has paralleled the Restatement view in applying the broad rule that "the duty to exercise reasonable care arises whenever the activities of two persons come so in conjunction that the failure by one to exercise that care is likely to cause injury to the other. *Borsoi* v. *Sparico*, 141 Conn. 366, 370, 106 A.2d 170."

*Hedderman* v. *Robert Hall of Waterbury, Inc.,* 145 Conn. 410, 413, 144 A.2d 60. " 'The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. *Botticelli* v. *Winters,* 125 Conn. 537, 542, [7 A.2d 433]. . . . [T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402." *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 138 Conn. 298, 303–304, 84 A.2d 267.

In view of these principles the operator of an ice cream truck, when he intentionally undertakes to attract children into the streets, assumes by such action the legal duty to act with care in relation to the children he has attracted to his area of business. The precise question presented in the case before us is whether the duty of the defendant Chester extended to protecting the young plaintiff from the negligence of others. When a street vendor deliberately uses a public street or an area close to or adjacent to a public street to sell his wares for profit, and by his bell, gong, chimes or other method of attraction, consciously and intentionally invites potential customers, many of whom are children, to the zone of danger from traffic, it is foreseeable that children would cross the street and be in streets in the area where he is doing business and where there is potential danger. When this happens, a duty arises with respect to the safety of the children deliberately enticed to the area, in view of their often singleminded interest in his wares and their accompanying disregard for traffic. *Jacobs* v. *Draper,* 274 Minn. 110, 142 N.W.2d 628;

*Thomas* v. *Goodies Ice Cream Co.,* 42 Ohio Op. 2d 147, 233 N.E.2d 876. "Common sense and the most minimal regard for humanity suggest that one who intentionally attracts small children to a place in or so close to a street or highway that there is danger of their being struck by passing traffic should be under a duty to maintain a lookout for such traffic and, if he observes or in the exercise of ordinary care should observe a vehicle approaching close enough to constitute an immediate hazard, to warn the children present in the immediate area of the attraction or make such other reasonable effort to prevent their being injured as may be necessary in the circumstances." *Mackey* v. *Spradlin,* 397 S.W.2d 33, 38 (Ky. App.). This duty of care extends not only to children actually observed but to children whom the defendant would have observed had he been using reasonable care.

This duty of care is no more than the standard set forth in *Goldberger* v. *David Roberts Corporation,* 139 Conn. 629, 632, 96 A.2d 309: "For a person to be negligent, it must appear that a reasonably prudent person in his position, knowing what he knew or should have known, would have anticipated that harm of the general nature of that suffered was likely to result from his conduct." This application of the duty of reasonable care does not constitute a new doctrine carved out from or engrafted upon the established standards for imposing liability in negligence cases. The result in this suit does not place new burdens on street vendors but merely requires them to fulfill the same obligations which each of us must discharge in our daily conduct. As was stated in *Cote* v. *Palmer,* 127 Conn. 321, 328, 16 A.2d 595, in the discussion and approval of imposing liability in rescue cases: "It better accords

with the analogies of the law to apply the usual standard of conduct, that is, the conduct of an ordinarily prudent person under the same circumstances." The evidence presented a jury question as to whether the defendant Chester violated the duties and obligations which he owed the plaintiff under common-law principles, and if so, whether that violation proximately caused the accident.

The court charged the jury: "If you find that the presence of the alleged Softee truck was a mere condition and not a cause of this accident, then, of course, you must bring in a verdict for the defendants Shiels and Chester; for, of course, to support a verdict for the plaintiff, the alleged presence of the Mister Softee truck, under the circumstances as described in the evidence and under the claim of negligence in paragraphs 6c and 6e must have been a proximate cause of her injuries, as I have defined proximate cause to you." The defendants claim that this charge was in error. The portion of the charge relating to a condition in no way prejudiced the defendants and, if anything, was too favorable to the defendants. See *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714, 720, 146 A.2d 910. Although that portion of the charge relating to the presence of the ice cream truck being a proximate cause would be erroneous if taken by itself, the charge must be considered as a whole. *State* v. *Raffone*, 161 Conn. 117, 127, 285 A.2d 323; *State* v. *Johnson*, 139 Conn. 89, 93, 90 A.2d 905. In the context of the whole charge and its specific reference to paragraphs 6 (c) and 6 (e) of the complaint, it is clear that the jury could only construe this instruction to mean that if they believed the defendants' version that the truck did not stop at the area in question, then there could be no award of damages

to the plaintiffs. Aside from this, the record discloses no exception to this portion of the charge at the time other exceptions were taken. This alone would be dispositive of this assignment of error. Practice Book § 249; *Prystash* v. *Best Medium Publishing Co.,* 157 Conn. 507, 511–12, 254 A.2d 872.

The defendants claim that the court erred in submitting to the jury the allegation, "(f) IN THAT he violated the ordinance 25.16(1) [sic] of the City of Hartford relating to peddlers and vendors under the circumstances then and there existing." In charging the jury the court restricted their consideration of the applicability of the ordinance to that part which provides: "It shall be unlawful for any . . . ice cream vendor to . . . attempt to effect a sale of . . . ice cream to any minor child . . . when the minor is so situated that the street . . . separates the vendor and the vendor's vehicle from the prospective minor purchaser." Hartford Mun. Code § 25-16.1 (1). In *Duplin* v. *Shiels, Inc.,* 165 Conn. 396, 398, 334 A.2d 896, we had occasion to comment on this very ordinance. The issue there, however, was on a portion of the ordinance which made it a violation to sell or attempt to effect a sale of ice cream to any minor child "when the minor to the knowledge of the vendor has crossed the street." The court in the case before us specifically instructed the jury not to consider this portion of the statute as there was no evidence presented that the defendant Chester had actual knowledge that the plaintiff had crossed Mather Street.

The defendants claim that there was no evidence from which it could be found that the defendant Chester "attempt[ed] to effect a sale" to the plaintiff as stated in the ordinance. To attempt to effect

a sale means an attempt to bring about a sale. It does not necessarily mean that a sale will result or that the vendee is inclined to or can purchase, nor does it require that the vendor know of the presence of a vendee. The focus of the ordinance is on the vendor and his activities and intentions. It was for the jury to determine as questions of fact not only whether the truck did stop on Mather Street almost directly opposite the plaintiff's home and did ring its bell or gong but if it did then whether that conduct constituted an attempt on the defendant Chester's part to effect a sale of his wares to the plaintiff, when a street separated her from him and his ice cream truck.

It may be argued that the ordinance imposes different burdens on street vendors dependent on the location of a minor and that a heavier burden is placed on the vendor when the child has not crossed the street than when the child had crossed the street. Assuming this to be so, this imbalance is a matter of municipal legislative policy. No attack has been made in the assignment of errors that the ordinance is either unconstitutional or unenforceable for vagueness, inconsistency, or any other reason.

The defendants further claim that even if the jury did find negligence on the part of the defendant Chester under any or all of the three allegations of negligence submitted to the jury, such negligence could not be deemed to be the proximate cause of the injuries and damages suffered by the plaintiff and, further, that the impact by the vehicle driven by the defendant Mansfield was an independent intervening cause. The court charged on the issues of proximate cause and intervening cause as fol-

lows: "[I]t is for you to determine whether there was any negligence on the part of Samuel Chester and, if so, whether that negligence continued as a substantial factor in producing the plaintiff's injuries or whether there was an intervening cause which entirely superseded it. If you find the latter to be the situation, the defendants Samuel Chester and Shiels cannot be held liable. The liability of the defendant for his tortious act may also be cut off by the intervention of a competent intervening cause." The defendants do not claim error in this charge but claim that under all the facts presented, there was no proof of proximate cause and that the actions of the defendant Mansfield were, as a matter of law, an intervening cause which superseded any negligence of the defendant Chester. In light of the previous discussion concerning the duty of care required of the defendant Chester under the circumstances then and there prevailing, the jury properly could have found that the defendant Chester's negligence and that of the defendant Mansfield were concurrent, and were substantial factors, in that they were contemporaneous and coexistent and in that the negligence of both actively continued to operate up to the time the plaintiff was struck. *Gravely* v. *Townsend,* 163 Conn. 360, 364, 307 A.2d 174; *Albert* v. *Lee Circle, Inc.,* 162 Conn. 124, 128, 291 A.2d 735; *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 28–29, 266 A.2d 370; *Figlar* v. *Gordon,* 133 Conn. 577, 582, 53 A.2d 645; *Roden* v. *Connecticut Co.,* 113 Conn. 408, 413, 155 A. 721.

The defendants' claim that the verdict was contrary to law is based on their assertion that the defendant Chester had no legal duty to the plaintiff, that there was no violation of the ordinance, and that even if there was, it was not shown that the

violation of the ordinance was a proximate cause of the plaintiff's injuries and damages. Considering the previous discussion in relation to the degree of care required of the defendant Chester and of his duty under the city ordinance, no further discussion of this claim is necessary.

The defendants' assertion that the verdict was not supported by the evidence is tested by the evidence printed in the appendices to the briefs. Practice Book §§ 716, 718, 721; *Moriarty* v. *Lippe,* 162 Conn. 371, 374, 294 A.2d 326. The evidence printed in the appendix to the plaintiffs' brief is more extensive than that recited above as taken from their claims of proof in the finding. No useful purpose would be served by repetition of this evidence here. The claim that the verdict was not supported by the evidence is without merit.

The final claim of the defendants is that as the verdict was excessive, it was error for the court to refuse to set it aside. The jury awarded $70,000 to the plaintiff and $3000 to her father. The court's ruling in refusing to set aside a verdict is entitled to great weight. *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 200, 292 A.2d 912; *Vogel* v. *Sylvester,* 148 Conn. 666, 669, 174 A.2d 122. The following excerpt from the memorandum of decision on the motions to set aside is particularly pertinent: "The question before this court is whether the verdict, having in mind the injuries suffered, falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *McKirdy* v. *Cascio,* 142 Conn. 80, 86 [111 A.2d 555]; *Hook* v. *Dubuque,* 153 Conn. 113,

115 [214 A.2d 376]. The plaintiff, Brenda Neal, suffered an injury to her head which resulted in a blood clot forming in the brain. This necessitated an operation to remove the blood clot, and, in that process, a portion of the brain was also removed. Eventually the resulting operative wound had to be covered with a plastic plate which will remain in her head for the remainder of her life. She was four years old at the time of the accident. In addition, there was medical testimony that she has a fifteen per cent permanent disability and that there is a reasonable probability that she will develop seizures in the future. The defendants Shiels, Inc. and Chester do not point to anything, other than the size of the verdict, as showing prejudice, partiality, mistake or corruption on the part of the jury." The defendants' claim is tested by the evidence printed in the appendices to the briefs. Practice Book § 718; *Raia* v. *Topehius,* 165 Conn. 231, 237, 332 A.2d 93. On review of the evidence presented by the plaintiffs, there was no error in the refusal of the court to set aside the verdict. The jury reasonably could have found that the amount awarded constituted fair, just and reasonable compensation for the plaintiff's injuries and damages. *Raia* v. *Topehius,* supra, 238; *Darling* v. *Burrone Bros., Inc.,* supra, 201; *Verrillo* v. *Green,* 155 Conn. 694, 230 A.2d 20.

The defendants' remaining assignments of error either were explicitly waived in their brief or were not briefed and are considered abandoned. *State* v. *Bitting,* 162 Conn. 1, 3, 291 A.2d 240.

There is no error.

In this opinion the other judges concurred.