GREG ZAREMBSKI *v.* THREE LAKES PARK, INC., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued March 13—decision released June 5, 1979

*David S. Golub,* for the appellant (plaintiff).

*James J. Maher,* with whom, on the brief, were *Brian P. Maher, Kevin J. Maher* and *Thomas C. Thornberry,* for the appellees (defendants).

Cotter, C. J. The trial court set aside a verdict for the plaintiff and rendered judgment for the defendants because the evidence failed to show any "actual or constructive notice of the defect or of a dangerous condition" on land of the defendant corporations to support recovery for the personal injuries sustained by the minor plaintiff while walking on the defendants' land.[1] Its action raises the only question on appeal.

In reviewing the court's action, we consider the evidence in the light most favorable to the plaintiff and every reasonable presumption should be given in support of the correctness of the verdict. *Camp v. Booth,* 160 Conn. 10, 11, 273 A.2d 714; *Pelletier v. Bilbiles,* 154 Conn. 544, 546, 227 A.2d 251. If we so regard the evidence, the jury could reasonably have found the following facts: The plaintiff, on May 16, 1971, who was then thirteen years old, fell

---

[1] The court did not act on the defendants' motion for a directed verdict until after it was rendered by the jury. *Lurier* v. *Danbury Bus Corporation,* 144 Conn. 544, 546–47, 135 A.2d 597; *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 23, 213 A.2d 449.

and injured himself when a large hill of loose, sliding fill caved in under him while he was walking on property in the possession and control of the defendants. The property, which was part of a tract of land formerly known as the Phillips Estate, in Darien and Stamford, was purchased by the defendants for development and construction of new homes. The area in question was along the Noroton River which runs through the grounds of the estate. The fill in that area had been brought in to raise the level of the land some ten to fifteen feet in height along the river as required by the town of Darien for issuance of a building permit.

The defendants rented several preexisting homes on the property, at the time of the incident, to various tenants, including Donna Schanz, the plaintiff's sister. Ms. Schanz and the other tenants were entitled to use the estate grounds in conjunction with their house rentals and the defendants placed no restriction on the tenants' use of the grounds described above. During the five years of Ms. Schanz' tenancy the plaintiff and other family members had often played on the grounds, including the area where the plaintiff fell which was between her dwelling and the river. The defendants were aware that tenants and their visitors, as well as neighborhood children, often played on the grounds in question.

The defendants were preparing the estate grounds for construction of new homes, at the time of the plaintiff's accident, by bringing in fill from other job sites consisting of dirt, trees that were cut, rocks and stones. Approximately 100,000 yards of such material were brought on the property in dump trucks driven by the defendants' employees and piled

on the land. The area between Ms. Schanz' house and the river, by May of 1971, had been converted from wooded and grassy slopes to piles of dirt and rock. Frank DeLeo, an officer of the defendant corporations, told Ms. Schanz, and also testified, that he had to bring the fill in to raise the land up to grade so that he could build homes in the area. At one point in his testimony he admitted the defendants filled in the area around the place where the plaintiff fell and that by May, 1971, the slopes along the river had changed from a grassy and wooded area to mounds and piles of loose fill dirt.

DeLeo also testified that in May, 1971, during the development of the property, he, his brothers, who were also officers of the defendant corporations, or other defendant employees, were on the land every day in the area where the plaintiff's fall occurred and were aware of the conditions existing on the land. DeLeo further testified that he knew and was aware that loose fill was placed on the land, mounds of dirt were present in the area of the plaintiff's fall, children played on the mounds and when he saw children playing in the area he told them to leave so they would not hurt themselves. At one time a sign had been posted for the safety of children, prohibiting trespassing on the grounds, but somehow it had been removed and no warnings of the dangers of the site were ever given to any of the tenants or their visitors, nor were there fences erected, guards available or warning notices directed to the tenants or their visitors concerning the conditions described above.

The trial court determined that the evidence "read as a whole" failed to show any actual or constructive notice of a dangerous condition on the day of the

incident and that there was lack of proof of notice under the rule stated in cases such as *Bartholomew* v. *Catania*, 161 Conn. 130, 132, 285 A.2d 350, and *Monahan* v. *Montgomery*, 153 Conn. 386, 390, 216 A.2d 824. Its conclusion was reached upon evidence indicating that the plaintiff and his younger brother, while visiting their sister, a tenant of the defendant landlords, were playing, running up and down the mounds of dirt and fill placed on land owned by the defendant corporations; and that, at one point the earth gave way, the plaintiff fell into a cave-in, found himself in a pit and was seriously injured.

Where a landowner knows or should know that children are likely to use his land upon which he maintains a condition which is likely to be dangerous to the children, the landowner may be held liable for harm resulting to the children from the dangerous condition. *Moonan* v. *Clark Wellpoint Corporation*, 159 Conn. 178, 186–92, 268 A.2d 384; *McPheters* v. *Loomis*, 125 Conn. 526, 532, 7 A.2d 437; *Wolfe* v. *Rehbein*, 123 Conn. 110, 113, 193 A. 608. See Restatement (Second), Torts § 339. We have held that a defendant is deemed to have actual notice of a dangerous condition created by one of its employees[2] and have stated that where there is evidence that a dangerous condition has existed for a reasonable length of time it would also support a claim of constructive notice; see *Warren* v. *Stancliff*, 157 Conn. 216, 219, 251 A.2d 74; *Foster* v. *Hartford Buick Co.*, 131 Conn. 348, 350–51, 39 A.2d 884; likewise we have declared that the jurors are entitled to draw reason-

---

[2] Without objection from the defendants, the trial court instructed the jury, in part, as follows: "Of course, if either of the defendants actually constructed the condition in question, with knowledge of its characteristics, then you would find such defendant would have notice of the condition." See *Foster* v. *Hartford Buick Co.*, 131 Conn. 348, 39 A.2d 884.

able, logical and proper inferences from the facts in evidence that it was more probable than not that the defendants had notice of the specific dangerous condition which was responsible for the plaintiff's injury. *Hennessey* v. *Hennessey*, 145 Conn. 211, 214-16, 140 A.2d 473. The verdict of the jury must stand if the evidence is such as to justify in their minds a reasonable belief of the probability of the existence of the material facts. *White* v. *Herbst*, 128 Conn. 659, 661, 25 A.2d 68.

It was testified that a mixture of fill was brought onto the grounds around the Schanz house, where the plaintiff fell, in dump trucks operated by the defendants' employees and "they were filling in with rocks and fill and trees that were cut." DeLeo testified that his corporations, beginning in 1967 and continuing for three years, brought in a large supply of material of loose fill of dirt and stones in order to raise the level of the land. As a result, the defendant corporations changed the place of the plaintiff's fall from grass slopes to a hilly area of dirt with piles of loose fill. After the area was filled a bulldozer was used to push the fill over. There was no evidence, however, that the mixture of fill was impacted by tamping or by rollers, for instance, to create a solid, firm footing underneath. Although there was a contradiction between different witnesses or different statements made by the same witnesses, the jury must determine the witnesses' credibility and may accept or reject their testimony, and the court cannot substitute its judgment for theirs. *State* v. *Reardon*, 172 Conn. 593, 597, 376 A.2d 65.

The evidence, as we have noted, was replete with testimony of loose fill which consisted of rocks,

stones, dirt and trees that were cut up, that underlying, unstable, hazardous conditions existed which were created by the employees of the defendants of which they were aware and had actual and constructive notice. Their warnings to children further evidenced their realization of the conditions which were allowed to continue. There was evidence that the loose fill was dumped and, in some cases, bulldozed; but the jury could properly infer from all the evidence that the defendants, who had specialized knowledge, failed to impact, tamp or use rollers or other equipment to solidify the soil after the mixed fill of cut trees, stones, rocks and dirt was dumped, and left in mounds on the land so as to present an unreasonable risk of harm from a cave-in as occurred in the present case. See *Haffey* v. *Lemieux,* 154 Conn. 185, 190–91, 224 A.2d 551. From this evidence the jury could reasonably infer that specific hazardous conditions created by the defendants existed for a reasonable length of time, were known by the defendants, and constituted, under all the circumstances, an unreasonable risk of harm to those, such as the plaintiff, who were known to play on the property. See *Moonan* v. *Clark Wellpoint Corporation,* supra; Restatement, supra, §§ 339, 342.

In the present case, the "specific unsafe condition" was the loose surface of the ground where the plaintiff was playing and was injured. "[T]here can be no question that the jury could reasonably find that [the defendants] had constructive, if not actual, notice of the existing dangerous and unsafe condition of the [land] and that [they were] negligent in permitting the existence of this hazardous condition . . . . This alleged condition was the defect in issue and was not a condition naturally productive

of a dangerous condition, as claimed by the defend-ant[s]. See *Hennessey* v. *Hennessey,* 145 Conn. 211, 140 A.2d 473." *Sauro* v. *Arena Co.,* 171 Conn. 168, 170-71, 368 A.2d 58. Since there was evidence from which the jury could have found that the defendants had notice of that specific condition and that this condition was the cause of the plaintiff's injury, the defendants' reliance upon cases such as *Monahan* v. *Montgomery,* 153 Conn. 386, 216 A.2d 824, and *White* v. *E & F Construction Co.,* 151 Conn. 110, 193 A.2d 716, is misplaced.

Considering all the evidence, including the rea-sonable inferences which could be drawn therefrom, we cannot say that the jury could not reasonably and logically have reached the conclusion they did. See *Hennessey* v. *Hennessey, supra.*

There is error, the judgment is set aside and the case is remanded with direction to render judgment on the verdict for the plaintiff.

In this opinion the other judges concurred.