KEVIN BROWN *v.* DORIS ROBISHAW ET AL.
(SC 17644)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 6—officially released June 5, 2007

*Carrie J. Legus*, with whom was *David S. Williams*, for the appellant (defendant Joseph Walukiewicz).

*John Nazzaro*, with whom were *Shannon Clark Kief*, and, on the brief, *Anne C. Dranginis* and *Jacqueline A. Wilson*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether, in a personal injury action arising from an altercation that was pleaded solely in negligence, the trial court improperly denied a request to instruct the jury on the special defense of self-defense. The defendant Joseph Walukiewicz[1] appeals[2] from the judgment

---

[1] The plaintiff, Kevin Brown, withdrew his claim against Doris Robishaw, the named defendant in this case, prior to trial. Accordingly, all references in this opinion to the defendant are to Joseph Walukiewicz.

[2] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

of the trial court, rendered after a jury trial, awarding the plaintiff, Kevin Brown, damages in the amount of $312,389.15. Because the trial court should have granted the defendant's request to charge on self-defense, we reverse the judgment of the trial court and remand the case for a new trial.

The record reveals the following facts, which the jury reasonably could have found, and procedural history. On April 15, 2002, the plaintiff visited the home of Doris Robishaw, his estranged wife, to ask her about the date of the final hearing in their pending divorce proceedings. Robishaw was asleep when the plaintiff arrived at her house. The defendant, who was Robishaw's boyfriend at that time, also was at her home with his adolescent son, and the defendant answered the door when the plaintiff arrived. The conversation between the two men became heated, and the defendant pushed or threw the plaintiff down the front stairs of the house.[3] As a

---

[3] The parties proffered substantially different versions of the events leading up to the plaintiff's injury. The plaintiff testified that, in the late afternoon of April 15, 2002, he drove to Robishaw's home to ask her about the date of their final divorce hearing. Although the plaintiff had spent the previous night drinking at a party, he testified that he was not intoxicated at the time that he arrived at Robishaw's home. According to the plaintiff, when he learned that Robishaw was asleep, he asked the defendant to let her know that he had stopped by to ask about the divorce date. The plaintiff testified that, as he turned to leave, the defendant stepped out onto the front porch and started yelling at him about rumors that the plaintiff had wanted to hurt the defendant's son. The plaintiff stated that he told the defendant, "I don't want any trouble," and again turned to leave, at which point the defendant grabbed his arm and threw him down the stairs. The plaintiff testified that he thought his leg was broken at this point, and he asked the defendant to help him get to his car. The defendant then accused the plaintiff of faking his injury and dragged him to his car.

The defendant testified that, on the day in question, the plaintiff arrived at the house and demanded to see Robishaw. According to the defendant, the plaintiff appeared very angry and was screaming for Robishaw. When the defendant explained that Robishaw was asleep, the plaintiff continued to yell for her, while stumbling back and forth outside the front door. The defendant testified that he had smelled alcohol on the plaintiff's breath and believed him to be intoxicated, so he stepped outside the screen door onto the deck to tell the plaintiff to leave. After further argument between the

result of this fall, the plaintiff suffered a serious fracture of his left ankle that has required several surgeries and has resulted in permanent deformity and impairment.

Thereafter, the plaintiff brought this action against the defendant,[4] alleging only that the defendant negligently had caused the plaintiff's injuries. In his answer, the defendant pleaded special defenses of comparative negligence and self-defense.[5] On the basis of the plead-

two men, during which the defendant repeatedly asked the plaintiff to leave, the defendant counted down from five to one, intending that the countdown be a warning to the plaintiff to leave the premises. At the end of the countdown, the plaintiff moved his arms and shoulders up toward the defendant as if to punch or choke him, and the defendant reacted by grabbing the plaintiff and throwing him down the stairs. The defendant testified that he had not intended to hurt the plaintiff, and, although he believed the plaintiff to be faking his injuries, he offered to call an ambulance. According to the defendant, the plaintiff declined his offer of an ambulance, but asked for help in getting to his car, which the defendant provided.

Robishaw, who had been asleep when the plaintiff had arrived at her house, testified she awoke because of yelling outside her bedroom, which was located within ten feet of the front door to her house. Robishaw testified that she went to the door, where she saw the plaintiff and the defendant yelling at each other through the screen door. She testified that she had heard the plaintiff yelling about wanting to know a date and heard the defendant use profanities in response, specifically ordering the plaintiff off the property and accusing him of threatening the defendant's twelve year old son. Robishaw denied hearing either man make any threats, and she testified that the plaintiff did not appear intoxicated. Although she went back to bed after hearing the plaintiff say, "he didn't want no trouble," Robishaw got out of bed again after she heard the plaintiff state that his leg was broken. At that point, she saw the defendant drag the plaintiff to his car.

[4] The plaintiff originally had filed a two count action against Robishaw and the defendant, alleging both negligence and reckless and wanton conduct as to each. The plaintiff amended his complaint for the first time after withdrawing the action against Robishaw. See footnote 1 of this opinion. On the second day of trial, the plaintiff amended his complaint a second time to withdraw the reckless and wanton conduct count at the close of evidence, but before the trial court charged the jury.

[5] With regard to the comparative negligence defense, the defendant claimed that the plaintiff unreasonably had provoked a confrontation, used abusive and offensive language, impaired his faculties by the consumption of alcohol, refused to leave the premises and failed to exercise reasonable care, all in disregard for his own safety.

ings and the evidence that he had introduced during the two day trial, the defendant filed a written request to charge on self-defense. The trial court denied the defendant's request to charge the jury on self-defense, but charged the jury on negligence, comparative negligence, and noneconomic and economic damages.

The jury returned a verdict in favor of the plaintiff, awarding him damages in the amount of $448,935.94, but also finding him 5 percent contributorily negligent. The defendant filed a motion to set aside the verdict, or for remitittur, and for reduction of the verdict because of collateral source payments. The trial court denied the defendant's motion to set aside the verdict, but ordered a remittitur of $78,000,[6] and reduced the verdict by $40,000 based on collateral source offsets, which resulted in a judgment for the plaintiff in the amount of $312,389.15. This appeal followed.

On appeal, the defendant claims that the trial court improperly refused to charge the jury on self-defense because he had established a sufficient evidentiary basis for that request.[7] In response, the plaintiff contends that the evidence did not support a charge on

The defendant also pleaded failure to mitigate damages as a special defense. The trial court refused, however, to charge the jury on the plaintiff's alleged failure to mitigate his damages. That ruling is not at issue in this appeal.

[6] The remittitur amount was agreed upon by the parties as the value of the damages that could be ascribed to impaired future earning capacity because, at the posttrial motion hearing, the court concluded that "there was no basis for the jury awarding future damages."

[7] The defendant also claims that a new trial is warranted because the trial court: (1) improperly instructed the jury about the plaintiff's impaired future earning capacity, which tainted the jury's deliberations in their entirety; and (2) abused its discretion when it denied the defendant's motion to set aside the verdict because the jury committed a mistake that indicated that it may have acted improperly out of sympathy, prejudice or partiality. Because we reverse the judgment based on the defendant's first claim on appeal, and we do not see these issues as likely to arise on remand, we need not decide these other claims on appeal.

self-defense. The plaintiff also argues that, regardless of whether the evidence would have supported that charge, there is no legal basis for a self-defense charge in a negligence case. We agree with the defendant that the trial court improperly failed to instruct the jury on self-defense.

"In determining whether the trial court improperly refused a request to charge, [w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 828–29, 836 A.2d 394 (2003). "If . . . the evidence reasonably does not support a finding on the particular issue, the trial court is duty bound to refrain from submitting it to the jury." Id., 834; see also *Goodmaster* v. *Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993) ("The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . The court should, however, submit to the jury all issues as outlined by the pleadings and as reasonably supported by the evidence." [Citations omitted; internal quotation marks omitted.]).

Whether the evidence presented by the defendant could support a finding that he acted in self-defense is a question of law over which our review is plenary. See, e.g., *Lin* v. *National R. Passenger Corp.*, 277 Conn. 1, 6, 889 A.2d 798 (2006). Similarly, whether there is a legal basis for a self-defense charge in a negligence

action also presents a question of law over which our review is plenary. See *State* v. *Brunette*, 92 Conn. App. 440, 449 n.12, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006).

The record reveals the following additional facts and procedural history. The defendant pleaded the special defense of self-defense in his answer, and requested that the trial court charge the jury accordingly.[8] After denying this request, the trial court delivered the following charge to the jury: "The plaintiff alleges that the

---

[8] It is undisputed that the defendant's request to charge was an accurate statement of the law of self-defense. In support of his requested charge, the defendant relied on 2 D. Wright & W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed. 1993) § 401, pp. 639–40, which provides in relevant part: "a. The defendant claims in defense that, even though you should conclude that he did make an assault upon the plaintiff, he was justified in what he did because he acted throughout solely in defense of his own person against an attack made upon him by the plaintiff. Under certain circumstances the law justifies the use of force or violence upon another when it is done in self-defense. In the first place, to avail himself of the defense the defendant must have reasonably believed that he was in imminent danger of suffering force or violence to his person because of the plaintiff's conduct and that it was reasonably necessary for him to act in self-defense. In the second place the defendant must not have been the aggressor, that is to say, he must not have been the one who, as the plaintiff contends, instigated the physical conflict between them by himself attacking the plaintiff, or by his own conduct leading the plaintiff reasonably to believe that the defendant was about to attack him. . . .

"b. But even if you find that the plaintiff and not the defendant was the aggressor, the defendant was justified in using force or violence only so far as it was reasonably necessary for him to do so to protect himself from injury. . . . Even though the defendant acted in self-defense and was not the aggressor, and so was justified in taking steps for his own protection, he could not lawfully exceed the bounds of conduct which a reasonable person situated as he was situated would consider necessary for his protection.

"c. The burden rests upon the defendant to prove to you that his acts and conduct were justified by reason of the fact that he acted solely in self-defense. . . . [I]f he has so proved that he was not the aggressor and was acting in self-defense, but has not so proved that he used no more force than was necessary, then, for any injuries caused to the plaintiff by such excess of force he is liable. . . ."

plaintiff's injuries and losses were caused by the carelessness and negligence of the defendant . . . in one or more of two ways. First, in that he physically handled the plaintiff in a manner which caused the plaintiff personal harm; and second, in that he pushed or moved the plaintiff causing the plaintiff to fall.

"If you find with reference to either of these allegations contained in the complaint that the defendant did something which a reasonably prudent person would not have done . . . under the same or similar circumstances or conditions, then the defendant's acts or failure to act would be negligence.

"However, if you find that the defendant did anything which a reasonably prudent person would have done and didn't do anything which a reasonably prudent person would not have done under the same or similar circumstances, then the defendant would not be negligent."

With regard to the defendant's special defenses, the trial court charged the jury on comparative negligence, which operates to reduce a defendant's comparative liability, unlike self-defense, which has the potential to negate completely a defendant's liability.[9] See *Giles* v.

[9] Specifically, the trial court instructed the jury: "In this case, the special defenses filed by the defendant claim that the injuries and damages allegedly sustained by the plaintiff were proximately caused as a result of his own contributory negligence in one or more of four ways.

"First, he unreasonably provoked a confrontation at said time and place in disregard for his own safety. Second, he used abusive and offensive language and acted in a belligerent and threatening manner in disregard of his safety when he knew or should have known that such conduct was unreasonable under all of the circumstances there existing. Third, at the time and place of the occurrence described in the complaint, the plaintiff had impaired his faculties and senses by the consumption of intoxicating liquor and, as a result of said consumption, failed to exercise due and reasonable care for his own safety which was a substantial factor in causing the incident, losses, damages and injuries alleged in the complaint. And finally, four, he failed and refused to leave the premises in disregard for his own safety when, under the circumstances existing, it was unreasonable for him to have remained on the premises.

*New Haven,* 228 Conn. 441, 454, 636 A.2d 1335 (1994) ("in a jurisdiction that utilizes the doctrine of comparative negligence, such as Connecticut, the emerging rule is that any negligence by the plaintiff should not bar liability but should merely reduce damages" [internal quotation marks omitted]).

Because a request to charge must be "an accurate statement of the law"; (internal quotation marks omitted) *Matthiessen* v. *Vanech,* supra, 266 Conn. 828; we turn first to the plaintiff's responsive argument that there is no basis in the law for a self-defense charge in a negligence action.[10] The defendant claims, however, that there are established legal principles that support a jury charge on self-defense in a negligence action. According to the defendant, courts faced with similar situations have taken three approaches in examining the link between self-defense and negligence, concluding that: (1) the intentional act of self-defense negates completely any claim of negligence; (2) negligence standards play a role in the analysis of self-defense; or (3) self-defense vitiates the duty element of negligence.

We begin our analysis by noting that it is well established that the defense of self-defense is available to a defendant faced with the intentional torts of civil assault and battery, provided that there is sufficient evidence in support of that defense. See, e.g., *Manning* v. *Michael,* 188 Conn. 607, 610, 452 A.2d 1157 (1982); *Hanauer* v. *Coscia,* 157 Conn. 49, 51, 244 A.2d 611

---

"To establish that the plaintiff was negligent, it's not necessary for the defendant to prove all of these specific allegations. The proof of any of these specific allegations is sufficient to prove negligence."

The trial court repeated these four bases for contributory negligence when the jury requested a copy of the comparative negligence instructions.

[10] We note that, at the posttrial motion hearing, the defendant acknowledged that he had been unable to locate a case in which a self-defense charge had been given in a civil negligence action. The trial court based its denial of the defendant's motion to set aside the verdict, in part, on this absence of case law supporting such a charge.

(1968); *Laffin* v. *Apalucci*, 130 Conn. 153, 154, 32 A.2d 648 (1943). Moreover, although the specific issue of whether the special defense of self-defense is available in an action wherein the plaintiff pleads only negligence is a question of first impression for this court,[11] the courts of Illinois and Louisiana have considered the relationship between this defense and a plaintiff's negligence claim. See, e.g., *Wegman* v. *Pratt*, 219 Ill. App. 3d 883, 894–95, 579 N.E.2d 1035 (1991) (although defendant admitted striking plaintiff intentionally, trial court improperly dismissed plaintiff's negligence claim in assault and battery action because self-defense can be pleaded in negligence action); *Blackburn* v. *Johnson*, 187 Ill. App. 3d 557, 562, 543 N.E.2d 583 (1989) (court acknowledged that it was "possibly treading on new ground," but allowed self-defense charge in negligence case wherein father had stabbed son after son attacked mother), cert. denied, 128 Ill. 2d 661, 548 N.E.2d 1066 (1990); *Brasseaux* v. *Girouard*, 269 So. 2d 590, 599 (La. App. 1972) (self-defense instruction proper in tort action, but defendant liable for shooting plaintiff because defendant "could not reasonably have believed that he was threatened with bodily harm, and that even if he did entertain such a belief he used a far greater force than appeared to be reasonably necessary to protect himself"), cert. denied, 271 So. 2d 262 (La. 1973).

The facts of this case involve the intersection between negligent and intentional torts. The plaintiff alleged that the defendant had handled him negligently. In reality, however, the plaintiff claims that the defendant committed the intentional tort of assault, and that the defendant's response to the plaintiff's behavior at

---

[11] See *Mazuroski* v. *Hernovich*, 42 Conn. App. 574, 577–78, 680 A.2d 1007 (general verdict rule barred consideration of plaintiff's claim that jury improperly applied contributory negligence, rather than self-defense, to plaintiff's claim of intentional and reckless conduct), cert. denied, 239 Conn. 922, 682 A.2d 1003 (1996).

Robishaw's door was unreasonable, and therefore, unjustified. It is undisputed that the defendant intentionally threw or pushed the plaintiff down the stairs of the house. Therefore, for negligence still to be an issue, the question of whether the defendant's intentional conduct was unjustified remains paramount. Indeed, the plaintiff himself notes that negligence "remains a viable cause of action even in instances when self-defense is claimed: if a party who feels threatened reacts unreasonably he remains liable in negligence."[12] Thus, the self-defense analysis incorporates negligence principles, as the plaintiff correctly points out that a party who overreacts to a perceived threat may be held liable in negligence if his actions are unreasonable in light of the circumstances. See *State* v. *Maselli*, 182 Conn. 66, 73, 437 A.2d 836 (1980) (in homicide case, jury may have concluded that "for the defendant to have believed under the circumstances . . . that it was necessary to fire eight shots at point blank range was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness"). In order to

---

[12] The plaintiff also argues that the defendant should have invoked the sudden emergency doctrine, which provides that "a defendant faced with a sudden and unexpected circumstance that leaves little or no time for consideration [may] not [be] held to the same duty of care required of a reasonably prudent person under ordinary circumstances." As the defendant points out in his reply brief, application of the sudden emergency doctrine typically has been limited to situations involving motor vehicle accidents. See, e.g., *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 312, 268 A.2d 639 (1970) (trial court improperly failed to charge on sudden emergency doctrine when plaintiff was injured in motor vehicle accident); *Miller* v. *Porter*, 156 Conn. 466, 468–70, 242 A.2d 744 (1968) (charge on sudden emergency doctrine improper when plaintiff offered no proof that defendant had opportunity to choose any course of action that would have prevented defendant from rear-ending plaintiff's car after plaintiff was forced to make emergency stop); *Vachon* v. *Ives*, 150 Conn. 452, 455, 190 A.2d 601 (1963) ("[t]he doctrine applies only in cases in which the operator is suddenly confronted by a situation not of his own making and has the opportunity of deciding rapidly between alternative courses of action").

determine if the party unreasonably overreacted so that he may be held liable for negligence, however, the fact finder first would have to be presented with the party's claim of self-defense. The jury in the present case was not provided with the opportunity to accept or to reject that defense.

The issues we are confronted with in the present case are similar to those addressed by the Appellate Court in our sister state of Illinois in *Blackburn* v. *Johnson*, supra, 187 Ill. App. 3d 557. *Blackburn* was a wrongful death action arising from an incident in which a father had stabbed his intoxicated son during a fight that had broken out after the son had struck his mother. Id., 559. The plaintiffs, who included the administrator of the son's estate, won a verdict based on negligence after abandoning their intentional tort theory. Id. The defendant, the administrator of the father's estate, appealed, arguing that the negligence verdict was not supported by the facts because, if any actionable tort had taken place, it must have been an intentional tort. Id. Similar to this case, both parties agreed that the defendant had acted intentionally and that the defendant had raised the defense of self-defense to justify his conduct. Id., 560. The plaintiffs argued, however, that the defendant unreasonably had used excessive force in his self-defense. Id. The plaintiffs reasoned that "a person using self-defense would have a duty to the other party to only use so much force as a reasonably prudent person would in that situation. . . . Thus, whether the ultimate act (the stabbing) is intentional or not is immaterial. The focus is on the determination of the necessity of the use of the force. Therefore, under these facts, an intentional act can be performed negligently." Id. Acknowledging that it was "possibly treading on new ground," the court permitted the jury verdict to stand because it concluded that "the plaintiffs' arguments have merit." Id., 562.

As the Illinois Appellate Court explained, the special defense of self-defense incorporates its own negligence analysis. Like the plaintiffs in *Blackburn*, what the plaintiff in the present case really claims is that the defendant unreasonably perceived a threat to his person and, in response, used excessive force to protect himself. We have previously recognized that "the court should discuss the facts in evidence in such a way as to enable the jury to understand the real issues of the case. Here, the real issues were an assault without justifiable excuse, or one committed in self-defense." *Laffin* v. *Apalucci*, 128 Conn. 654, 657–58, 25 A.2d 60 (1942). Accordingly, to instruct the jury on the real issues of the case, the court should have charged the jury on self-defense. See *Markey* v. *Santangelo*, 195 Conn. 76, 81, 485 A.2d 1305 (1985) (charge on negligent assault proper for codefendant who pleaded self-defense because "[i]f, in fact, the jury believed that [the named defendant] had acted in self-defense, they would then have had to consider whether in so acting he used more force than was reasonably necessary to prevent an impending injury").[13] Without that instruction, the jury's consideration of the case was improperly limited.

The inclusion of the self-defense charge would have allowed the jury to find that the defendant's actions were justified in light of all of the circumstances, a

[13] In *Markey* v. *Santangelo*, supra, 195 Conn. 77, the plaintiff brought an action for assault and battery against the named defendant and four other codefendants. The jury reached a verdict against the named defendant and one codefendant, both of whom appealed based, inter alia, on an improper charge to the jury on negligent assault. Id. The named defendant then withdrew his appeal. Id. In briefly addressing the codefendant's claim regarding the instruction on negligent assault, the court noted that "[n]egligence became an issue in this case only because in his answer [the named defendant] set up self-defense as a justification for the assault. If, in fact, the jury believed that [he] had acted in self-defense, they would then have had to consider whether in so acting he used more force than was reasonably necessary to prevent an impending injury." Id., 81. This language lends further support to our conclusion in the present case.

finding that could not be made under the comparative negligence charge. The instructions as given never informed the jury that the use of force may sometimes be justified; see footnote 8 of this opinion; instead, they essentially informed the jury that if the defendant intended to handle the plaintiff, he was liable unless a reasonably prudent person would have done the same or the plaintiff had been more negligent than the defendant. These instructions, couched in the language of comparative negligence, never laid out the more straightforward principles of self-defense, which would have given the jury the opportunity to consider the defendant's actions in light of his perception of the threat of the plaintiff's behavior.[14] The trial court's failure to instruct on a special defense properly pleaded was, therefore, improper, as "the court's charge [must] fairly and correctly [cover] all the particular points

[14] In the charge on negligence, the trial court instructed the jury that "[a]ll the surrounding circumstances must be considered. For in circumstances of slight danger a slight amount of care may be sufficient to constitute reasonable care, while in circumstances of greater danger, accordingly, a greater amount of care would be required to constitute reasonable care."

The defendant argues that this portion of the charge may have given the jury the impression that the defendant had a duty to treat the plaintiff with a higher level of care if he believed he was in a dangerous situation. We do not, however, review jury instructions in a vacuum. "[J]ury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]nstructions to the jury need not be in the precise language of a request. . . . Moreover, [j]ury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, supra, 266 Conn. 831–32. The trial court's negligence instructions as a whole were proper, and the portion that the defendant finds objectionable merely was part of the trial court's attempt to inform the jury that the standard of reasonable care varies according to the particular factual situation.

raised by the [defendant]." *Hanauer* v. *Coscia*, supra, 157 Conn. 55.

Moreover, basic tenets of fairness dictate that the defendant be permitted to raise a defense of self-defense. A contrary conclusion would permit the plaintiff essentially to dictate the defendant's defense strategy by styling the claims in his pleadings to preclude the use of certain defenses that otherwise might be appropriate given the facts of a particular case.[15] See *ATC Partnership* v. *Windham*, 268 Conn. 463, 466 n.4, 845 A.2d 389 (2004) (Connecticut courts "construe pleadings broadly and realistically, rather than narrowly and technically . . . [in order to] do substantial justice between the parties" [internal quotation marks omitted]). In the present case, it was undisputed that the defendant had pushed the plaintiff and caused his injuries, which required the defendant to explain his conduct. Although comparative negligence was one defense available to the defendant, self-defense was another that would have been more easily comprehended by the jury and applied to the defendant's conduct. The former allocates liability, but does not relieve the defendant of wrongdoing or completely negate his liability. The latter, on the other hand, serves to absolve the defendant entirely of any wrongdoing, and thereby negates his liability. We decline to endorse the notion that a plaintiff, in pleading his case, may force a defendant to defend himself exclusively within the framework chosen by the plaintiff.

Having established that a self-defense charge may, in some cases, be appropriate in a negligence action, we turn to the question of whether the defendant met his burden of providing sufficient evidence to warrant

---

[15] The defendant posits that the plaintiff chose to base this action solely in negligence, rather than to follow the more typical strategy of pleading both intentional and unintentional conduct, in an attempt to ensure insurance coverage for the plaintiff's claims.

such a charge. "The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." (Internal quotation marks omitted.) *Goodmaster* v. *Houser*, supra, 225 Conn. 648. "In determining whether the defendant is entitled to an instruction of self-defense, we must view the evidence most favorably to giving such an instruction. . . . The defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Ramos*, 271 Conn. 785, 800, 860 A.2d 700 (2004).

We reject the plaintiff's claim that the defendant did not introduce sufficient evidence to support a self-defense charge. The testimony presented at trial permitted a reasonable inference that the defendant had acted in self-defense. Specifically, the defendant testified that he had believed that the plaintiff was drunk, that the plaintiff had been yelling at him and generally acting in a belligerent and threatening manner, and, most significantly, that the plaintiff had raised his arms and shoulders just before the defendant pushed him down the stairs. In addition, the defendant testified that the plaintiff had refused to leave the property after he had been informed that Robishaw was sleeping. The defendant also testified that, during his only previous encounter with the plaintiff, the plaintiff had threatened both the defendant and the defendant's son.[16] As a result, the jury could have found that the defendant was rea-

---

[16] The parties had met on one prior occasion, at the home of Robishaw's daughter, Tonya Pomeroy, while Robishaw and the plaintiff were separated. The defendant was the only adult in the house and was babysitting Pomeroy's one year old child when the plaintiff arrived at the apartment and proceeded to search it, claiming that he "was looking for a man named Joe who was seeing his wife . . . ." The defendant testified that he lied to the plaintiff and told him his name was Dave because "he was very angry and I had a baby in my arms." According to the defendant, a short time later, he overheard the plaintiff talking to Robishaw's daughter, threatening to hurt the defendant and his children. The plaintiff testified that he had been looking for the defendant on that date, but was not angry and did not threaten the defendant or his children.

sonably concerned for his safety and that of his son, and reasonably believed that a physical response to that threat was required to prevent harm. The evidence therefore provides a reasonable basis for a properly instructed jury to find that the defendant was acting in self-defense.[17] Accordingly, we conclude that the defendant was entitled to a jury charge on self-defense.[18]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[17] The plaintiff contends that the evidence was insufficient to justify a self-defense instruction because there was testimony that: (1) the defendant, not the plaintiff, was the angry party; (2) the defendant had stepped out of the safety of the house onto the front porch; (3) the plaintiff never had physically touched the defendant; (4) the plaintiff did not have a weapon; (5) the defendant had taken judo classes in the past; and (6) the plaintiff did not verbally threaten the defendant, and had stated that he did not want any trouble. Although the plaintiff correctly notes the conflict in the evidence offered on the defendant's claim that he had acted in self-defense, resolution of this conflict and the weight to be accorded to the defendant's evidence should have been left to the jury, because the defendant met his threshold burden of providing sufficient evidence to support his special defense.

[18] The plaintiff also argues that, even if the trial court's failure to charge the jury on self-defense was improper, the jury instructions as a whole were fair to the defendant because they "covered the defendant's contention that his actions had to be viewed in light of the plaintiff's behavior and . . . fairly presented the case to the jury in such a way that injustice is not done to either party under the established rules of law." It is true that "[i]n assessing the adequacy of a charge to the jury, we consider the charge in its entirety, and judge it by its total effect rather than by its individual component parts." *Goodmaster* v. *Houser*, supra, 225 Conn. 644. However, "[t]he charge must give the jury a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and must be suited to guide them in the determination of those issues." Id., 645. For the reasons we have already given, we conclude that the charge in its entirety did not give the jury a clear comprehension of the issues in the present case. It simply is not enough to say that the charge on comparative negligence permitted the jury to view the defendant's actions in light of the plaintiff's behavior. Comparative negligence assumed that the defendant's conduct was unreasonable, whereas a self-defense instruction potentially could have justified the defendant's actions and relieved him entirely from liability for the damages suffered by the plaintiff. Thus, the jury charge as a whole did not "fairly [present] the case to the jury so that no injustice was done under the established rules of law." Id.