******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## DAVID BELTON *v.* ENDRI DRAGOI ET AL.
## (AC 46182)

Bright, C. J., and Clark and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court rendered following its granting of the motion for summary judgment filed by the defendant police officers. The plaintiff claimed, inter alia, that the court improperly concluded that there were no genuine issues of material fact as to whether the defendants used excessive force when they arrested him. *Held*:

The trial court improperly rendered summary judgment for the defendants with respect to the plaintiff's battery claim because, after viewing the evidence in the light most favorable to the plaintiff as the nonmoving party, this court concluded that genuine issues of material fact existed as to the force the defendants used during the altercation with the plaintiff and, thus, the plaintiff was entitled to have a jury review the evidence and determine whether the force employed by the defendants was justified and reasonable.

The trial court did not err in rendering summary judgment for the defendants with respect to the plaintiff's false arrest claim because the undisputed facts established that there was probable cause to arrest the plaintiff for interfering with an officer.

Argued April 25—officially released October 8, 2024

*Procedural History*

Action to recover damages for, inter alia, battery, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Young, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Christopher DeMarco*, for the appellant (plaintiff).

*Alan R. Dembiczak*, for the appellees (defendants).

*Opinion*

BRIGHT, C. J. This case arises out of an incident between the plaintiff, David Belton, and the defendants, Endri Dragoi and J. T. Sosik, who are police officers

in the city of New Haven (city). At issue on appeal is whether the trial court properly rendered summary judgment for the defendants as to the plaintiff's claims that the defendants committed a battery on him and falsely arrested him. Specifically, the plaintiff claims that the court improperly concluded (1) with respect to the alleged battery, that there are no genuine issues of material fact as to whether the defendants used more than reasonable force during the altercation and (2) with respect to the alleged false arrest, that (a) the defendants were entitled to governmental immunity because the plaintiff had failed to raise a claim of negligent false arrest and (b) there are no genuine issues of material fact as to whether the defendants had probable cause to arrest the plaintiff.[1] We agree with the plaintiff's first claim but disagree with his other claims. Accordingly, we reverse in part the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff as the nonmoving party, and procedural history are relevant to our analysis. On July 30, 2019, the plaintiff was standing on the front stoop of the building at 1343 Chapel Street in New Haven (property), where he resided with his mother. The defendants, who were on duty and on patrol, stopped at the property because they did not recognize the plaintiff as someone

---

[1] The plaintiff also identifies as separate claims that the court's analysis of his battery cause of action is inherently contradictory, that the court relied on General Statutes § 52-557n even though the defendants did not rely on that statute in their motion for summary judgment, and that, because his causes of action were "ambiguous" as to whether they were based on intentional or negligent conduct, the court should have let the jury make that determination or should have treated the defendants' motion for summary judgment as a motion to strike so that the plaintiff could replead in a way to avoid the defendants' claims of immunity. We do not view these claims as separate claims and address them in the context of the claims we have identified. Furthermore, for sake of clarity, we have addressed the plaintiff's claims in a different order from that in which they were briefed by the plaintiff.

who resided there. The owner of the property had provided the New Haven Police Department with a list of approved tenants to assist the department in identifying trespassers at the property. The defendants exited their vehicle and approached the plaintiff. Both defendants were in uniform and wearing body cameras that recorded their interaction with the plaintiff. Dragoi asked the plaintiff if he lived at the property. The plaintiff responded by asking Dragoi, "Why?" Dragoi then asked the plaintiff: "Do you live here or are you lying?" The plaintiff responded that he lived at the property. Dragoi then instructed the plaintiff to step off the front stoop, at which time both defendants grabbed the plaintiff's arms to physically remove him from the front stoop. When the plaintiff asked why they were moving him, Dragoi told the plaintiff that he had to make sure that the plaintiff did not have any weapons on him. Dragoi then conducted a patdown search of the plaintiff, with which the plaintiff complied. The plaintiff asked Dragoi why they were "fucking with [him]," and Dragoi accused the plaintiff of trespassing on the property. After the plaintiff told the defendants that he did not like people touching him, both defendants, using both hands, grabbed the plaintiff's arms and waist and attempted to forcibly remove him from the front stoop. The plaintiff asked, "What'd I do?" Dragoi simply repeated his command that the plaintiff get off the stoop and instructed him to sit down, while the defendants continued to struggle with the plaintiff. During this struggle, the plaintiff raised his voice and told the defendants, "Don't fucking touch me." All of this occurred within two minutes of when the defendants first encountered the plaintiff.

As the altercation escalated, the plaintiff's sister, Devina Belton, arrived and told the defendants that the plaintiff resided at the property with their mother and

then called her mother, while standing next to the defendants, to get her to come down to verify that the plaintiff resided at the property. The plaintiff's sister also yelled at the plaintiff to comply with the defendants' orders to step down from the stoop. Neither the plaintiff nor the defendants listened to the plaintiff's sister. Instead, the altercation between the plaintiff and the defendants became more physical, and the plaintiff more vigorously resisted the efforts to move him from the front stoop.

Dragoi threatened to handcuff the plaintiff and attempted to twist the plaintiff's arm behind his back. In response, the plaintiff pushed Dragoi away from him. The defendants then stepped off the front stoop and Dragoi pointed his Taser gun at the plaintiff and instructed him several times to get on the ground. When the plaintiff did not comply and said that he would not sit down, Dragoi threatened to use the Taser on the plaintiff. At that point, the plaintiff stepped off the front stoop toward Dragoi. Before he could sit down, Dragoi pushed the plaintiff back, and the plaintiff swatted Dragoi's hand away and returned to the front stoop. Dragoi again instructed the plaintiff to get on the ground and told him, "last chance." The plaintiff's sister also was yelling at the plaintiff to get on the ground, as she did not want him to get tasered. The plaintiff then stepped off the front stoop, in the direction of Dragoi, in a possible effort to comply with Dragoi's demand that he sit down. Before he could do so, Dragoi fired his Taser at the plaintiff, which hit him.[2] The defendants then grabbed the plaintiff's arms and tried to put them behind his back. The plaintiff resisted these efforts and pulled his arms away. The defendants ordered the plaintiff to

[2] "[W]hen a Taser is deployed, it fires two prongs at the targeted person, which stay connected to the Taser gun by conductive wire. . . . Generally speaking, the shock from the Taser completely incapacitates the target for the duration of the cycle. At the end of the cycle, however, the target's normal functioning is immediately restored." *State* v. *Osbourne*, 138 Conn. App. 518, 523, 53 A.3d 284, cert. denied, 307 Conn. 937, 56 A.3d 716 (2012).

get on the ground, but he refused to comply. Dragoi then discharged his pepper spray, which hit Sosik but not the plaintiff.

Eventually, the plaintiff was handcuffed. He and Dragoi then continued to argue about who was responsible for the altercation. The plaintiff was then placed in the back of an ambulance and transported to the hospital to have the Taser prongs removed from his body. Dragoi thereafter interviewed the plaintiff's sister, who told him that the plaintiff had been residing with his mother at the property for more than one year. She also described the plaintiff as acting "crazy" during his interaction with the defendants. The plaintiff was charged with disorderly conduct, interfering with a police officer, and criminal trespass in the third degree. Those charges later were dismissed.

On March 20, 2020, the plaintiff commenced the underlying action against the defendants. In the first count of his complaint, the plaintiff alleged that, "[a]t all relevant times, the defendants . . . were duly appointed members of [the New Haven] Police Department, acting under color of state law, and were acting in their official capacities as police officers for the city." After describing the events of July 30, 2019, the first count of the complaint concludes by alleging that the defendants' actions "constitute battery upon the plaintiff, as a result of which the plaintiff required hospitalization and suffered pain and physical injury, and offended the plaintiff's personal sense of dignity." In the second count of his complaint, the plaintiff incorporated the allegations from the first count and alleged that his "arrest was without probable cause that an offense had been committed." The plaintiff alleged that, as a result of his arrest, he had to live with the threat of incarceration until the charges against him were "dismissed without a finding of probable cause having been made by a judicial authority." The plaintiff concluded

his second count by alleging that, "[a]s a result of the defendants' actions in falsely arresting the plaintiff, the plaintiff suffered emotional distress." The plaintiff requested as relief "money damages," "punitive damages" and "such other and further relief as the court may deem appropriate."

In their answer to the first count of the complaint, the defendants admitted "the deployment of a Taser and pepper spray" but alleged that doing so was "in response to the plaintiff's noncompliant, physically aggressive and belligerent behavior." They also denied that their actions constituted a battery of the plaintiff. In response to the plaintiff's allegations in the second count of the complaint, the defendants denied that their arrest of the plaintiff was without probable cause. The defendants also pleaded three special defenses. In their first special defense, the defendants pleaded that they were justified in using physical force on the plaintiff because they reasonably believed such force was necessary to effect the plaintiff's arrest or to defend themselves while attempting to arrest the plaintiff. In their second special defense, the defendants alleged that any injuries the plaintiff suffered were caused by his own negligence in resisting the defendants' lawful commands. In their third special defense, they alleged that they were entitled to qualified immunity because at all relevant times they were acting in the course and scope of their employment as municipal employees, and their actions "were governmental in nature and required the exercise of judgment and discretion on their part." In his reply to the defendants' qualified immunity defense, the plaintiff admitted that the defendants were acting in the scope of their employment and that their actions were governmental in nature and required the exercise of judgment and discretion. Nevertheless, the plaintiff denied that the defendants were entitled to qualified immunity because "their actions were either malicious,

illegal or constituted wilful misconduct and/or . . . one or more of the defendants' actions subjected an identifiable person to imminent harm.''

On June 15, 2022, the defendants moved for summary judgment on three grounds. First, they argued that, because the defendants were sued only in their official capacities, the plaintiff's causes of action were effectively against the city and the city cannot be held liable for the intentional torts of its employees. Second, they argued that the plaintiff's battery cause of action failed because the defendants were justified in their use of force. Third, they argued that the plaintiff's false arrest cause of action failed because there was probable cause for the plaintiff's arrest. In support of their motion, the defendants relied on the transcripts of the depositions of the plaintiff and Devina Belton, the defendants' affidavits, an approved tenant list for the property, and copies of the video footage from their body cameras recorded during the altercation.

In response to the defendants' motion, the plaintiff argued that his causes of action for battery and false arrest did not necessarily allege intentional torts. He noted that his complaint did not allege that the defendants acted intentionally and argued that Connecticut has recognized that both causes of action can be based on negligent conduct. He further argued, relying on the body camera video, that there were genuine issues of material fact as to whether there was probable cause for the plaintiff's arrest and whether the defendants acted reasonably in using physical force on him.[3]

The defendants filed a reply to the plaintiff's objection in which they argued that, although causes of action

---

[3] The plaintiff also relied on excerpts from his deposition transcript as evidence that he resided at the property and was not trespassing. Because we view the evidence in the light most favorable to the plaintiff as the nonmoving party, we assume this fact for purposes of our analysis.

for battery and false arrest can be based on negligent conduct, the plaintiff's allegations in his complaint and the undisputed evidence establish that the plaintiff's claims are based on the defendants' intentional conduct. They also reiterated their arguments that the undisputed facts prove that, even if the plaintiff's causes of action are viewed as sounding in negligence, they fail because the defendants' use of force during the altercation was a reasonable response to the plaintiff's actions and there was probable cause for his arrest. They further argued that, if the plaintiff's causes of actions sounded in negligence, they were entitled to discretionary act immunity under General Statutes § 52-557n.[4]

After hearing oral argument from counsel for the parties, the court issued a memorandum of decision rendering summary judgment in favor of the defendants. With respect to the plaintiff's first count, the court agreed with the plaintiff that the allegations therein could be read as asserting a claim of negligent battery because they "could support a claim that the [defendants] used more force than reasonably necessary to effectuate a lawful arrest." Nevertheless, the court concluded that the plaintiff's battery cause of action failed as a matter of law because the undisputed evidence established that the defendants' use of force was justified by the plaintiff's actions in resisting arrest and not complying with the defendants' orders.

With respect to the plaintiff's second count alleging false arrest, the court concluded that, if the plaintiff intended to rely on a theory that the false arrest was negligent, rather than intentional, he needed to specifically so plead. The court concluded that, because the

---

[4] Although § 52-557n has been amended since the events underlying this case; see Public Acts 2023, No. 23-83; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

plaintiff failed to plead that his false arrest was the result of negligent conduct, the second count must be read as alleging an intentional tort, as to which the defendants are entitled to immunity.[5] The court further concluded that the defendants were entitled to summary judgment on the false arrest count because the undisputed evidence established that there was probable cause for the plaintiff's arrest. The court thus granted the defendants' motion and rendered judgment accordingly. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin with our familiar standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing

---

[5] The court stated in its memorandum of decision: "The plaintiff has not specifically pleaded a claim of negligent false arrest, as our courts require. The allegation is one of intentional conduct. Therefore, the defendants are entitled to immunity under § 52-557n *for the claim of battery*." (Emphasis added.) We conclude that the court's reference to battery in the previous sentence was a scrivener's error. The immediately preceding sentences to the court's conclusion make clear that the court meant to say that there was immunity for the *claim of false arrest*, not for the claim of battery. This conclusion is buttressed by the court's statement that the plaintiff had sufficiently pleaded a claim of negligent battery such that the defendants had failed to establish as a matter of law that they were entitled to immunity under § 52-557n (a) (2) on the basis of the allegations of the plaintiff's complaint. Our conclusion thus disposes of the plaintiff's claim on appeal that the court's memorandum of decision is inherently contradictory because it concluded, on the basis of the allegations of the complaint, that the defendants were and were not entitled to immunity under § 52-557n.

the absence of any genuine issue [of] material facts [that], under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact [that] will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the [defendants'] motion[s] for summary judgment is plenary." (Internal quotation marks omitted.) *Day* v. *Seblatnigg*, 341 Conn. 815, 825, 268 A.3d 595 (2022).

I

The plaintiff first claims that the court improperly rendered summary judgment for the defendants on his battery cause of action because there are genuine issues of material fact as to whether the defendants' use of force was reasonable during the altercation. In response, the defendants argue that, because the complaint alleges, and the undisputed evidence shows, that the defendants' conduct can be viewed only as intentional and not negligent, they are entitled to immunity under § 52-557n (a) (2). Alternatively, they argue that, even viewing the plaintiff's battery count as sounding in negligence, the court correctly rendered summary judgment in their favor because the undisputed evidence establishes that their use of force was reasonable.

We begin with the relevant law that was the basis for the defendants' motion for summary judgment and the plaintiff's response thereto. Section 52-557n (a) (2) provides: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require

the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." "[O]ur Supreme Court [has] held that the defendant municipality [can] not be liable for intentional torts committed by its employees under § 52-557n (a) (2) (A). This court consistently has adhered to that precedent." *McCullough* v. *Rocky Hill*, 198 Conn. App. 703, 712, 234 A.3d 1049, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020).

Although the plaintiff did not sue the city in the present case, his complaint alleges that, "[a]t all relevant times, the defendants . . . were duly appointed members of [the New Haven] Police Department, acting under color of state law, and were acting in their official capacities as police officers for the city." "It is well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead, is one against the official's office and, thus, is treated as an action against the entity itself. See *Kentucky* v. *Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ('Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell* v. *New York City Dept. of Social Services*, 436 U.S. 658 [690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)]. . . . [In general] an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.' . . .) . . . ." (Citation omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 595, 881 A.2d 978 (2005).

On the basis of the allegations of the plaintiff's complaint and the legal principles set forth in the preceding paragraphs, the defendants argued in support of their motion for summary judgment that, because the defendants were sued for acting in their official capacities, the plaintiff's action constitutes an action against the city itself. Furthermore, they argued that, because battery and false arrest constitute intentional torts, the city is immune from liability pursuant to § 52-557n (a) (2).

In response to the defendants' motion for summary judgment, the plaintiff did not dispute that he was suing the defendants in their official capacities.[6] Instead, he argued that his causes of action were not barred by application of § 52-557n (a) (2) because they alleged negligent, as opposed to intentional, conduct. In particular, the plaintiff asserted: "The defendants argue that this case cannot be maintained as the plaintiff has alleged intentional torts against them, but such is not necessarily the case. The plaintiff's claims are based

[6] Other than a passing reference in his reply to the defendants being personally liable if their actions constituted wilful misconduct, the plaintiff did not argue in his appellate briefs that he was suing the defendants other than in their official capacities. At oral argument before this court, counsel for the plaintiff for the first time argued that the allegations of his complaint could be read as alleging claims against the defendants in their individual capacities. We will not consider an argument raised for the first time in a reply brief or at oral argument. See *Benjamin* v. *Corasaniti*, 341 Conn. 463, 476 n.8, 267 A.3d 108 (2021) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" (internal quotation marks omitted)); *Traylor* v. *State*, 332 Conn. 789, 809 n.17, 213 A.3d 467 (2019) ("[r]aising a claim at oral argument is not . . . a substitute for adequately briefing that claim").

Furthermore, such an argument is flatly inconsistent with how the plaintiff argued the immunity issue in opposition to the defendants' motion for summary judgment, wherein he focused on whether his causes of action sound in negligence or intentional tort and never disputed that, if they sound only in intentional tort, the defendants are entitled to summary judgment. In fact, during oral argument before the trial court, when asked by the court if claims against the defendants "based on either a reckless or intentional act . . . would be precluded as to these two defendants," the plaintiff's counsel responded: "Correct."

on two causes of action, battery and false arrest, neither of which allege[s] that the defendants acted intentionally.''[7] As support for his argument, the plaintiff relied on cases in which our Supreme Court had recognized negligence based causes of action of battery and false arrest.[8]

In their reply to the plaintiff's objection, the defendants argued that the allegations of the complaint and undisputed evidence established that there was nothing accidental about the defendants' conduct that would support causes of action for negligent battery or false arrest. They argued that the only reasonable interpretation of the complaint and undisputed facts is that the plaintiff's causes of action are based on intentional conduct. In support of their arguments, the defendants pointed to the plaintiff's prayer for relief that sought punitive damages, which are available only for intentional, and not negligent, conduct. Alternatively, the defendants argued that, if the plaintiff's battery and false arrest claims sound in negligence, the defendants are entitled to governmental discretionary act immunity under § 52-557n.[9] Finally, the defendants reiterated their

[7] At oral argument before the trial court, counsel for the plaintiff refused to commit as to whether his causes of action sounded in negligence or intentional tort. After acknowledging that he "would be precluded" from asserting a reckless or intentional tort claim against the defendants and being confronted with the inconsistency of seeking punitive damages in a claim for negligence, counsel for the plaintiff stated: "I don't claim it's an action in negligence. . . . I'm not saying whether or not this [is] an action in negligence or an intentional tort." He then asserted, without citing any authority, that § 52-557n (a) (2) only provides immunity for intentional torts involving malicious or criminal conduct. He similarly stated that § 52-557n does not preclude all claims against the city for an intentional tort before concluding this part of the argument by stating: "[R]ight now, the complaint doesn't specify whether or not this is a negligence action or an intentional tort action, or a reckless, or wanton and wilful action."

[8] See, e.g., *Markey* v. *Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985); *Sansone* v. *Bechtel*, 180 Conn. 96, 99, 429 A.2d 820 (1980).

[9] On appeal, the plaintiff claims that "[t]he court inappropriately considered the defense of [governmental] immunity, which was raised for the first time in the defendants' reply memorandum." This claim warrants little discussion. The defendants only raised their governmental discretionary act

arguments that the undisputed facts established that they had probable cause to arrest the plaintiff and that their use of force was reasonable.

Before addressing each of the plaintiff's causes of action, the court framed the parties' positions regarding the defendants' claim of immunity: "The defendants assert that they are entitled to immunity for what they claim are intentional torts alleged by the plaintiff. The plaintiff argues that he has not alleged intentional torts. Rather, he has alleged negligence claims of battery and false arrest."[10]

immunity defense in response to the plaintiff's claim, asserted for the first time in his objection to the motion for summary judgment, that his causes of action could sound in negligence. When ruling on the defendants' motion for summary judgment, the trial court did not address the defendants' discretionary act immunity argument. Instead, the court resolved the defendants' motion on the basis of whether the plaintiff's causes of action sounded in negligence or intentional tort, whether there were genuine issues of material fact as to the reasonableness of the force used by the defendants, and whether there was probable cause for the plaintiff's arrest. The defendants also have not raised discretionary act immunity as an alternative ground for affirmance in this appeal and acknowledge that the issue was never addressed by the trial court. Thus, the plaintiff's claim is of no moment.

[10] In his appellate briefs, the plaintiff claims that the court's characterization of his complaint as alleging negligent battery and false arrest is incorrect. He claims that his complaint is "ambiguous" as to whether the causes of actions asserted sound in intentional tort or negligence and that "it should be for the jury to determine whether the defendants' actions were negligent or intentional." He further claims that, in light of the ambiguity over the nature of his claims, the court should have treated the defendants' motion for summary judgment as a motion to strike so that he could replead his claims if necessary. Both claims are without merit.

First, the plaintiff did not dispute the underlying premises of the defendants' motion for summary judgment. Because the plaintiff was suing the defendants in their official capacities, he was effectively suing the city, and because the city cannot be held liable for the intentional torts of its employees, the court construed the plaintiff's argument as asserting that his claims sounded in negligence because otherwise they would be barred by application of § 52-557n (a) (2). Furthermore, the construction of the pleadings is a legal question for the court, not a factual question to be left for the jury. See *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 667, 127 A.3d 257 (2015) ("[c]onstruction of pleadings is a question of law" (internal quotation marks omitted)). Thus, the court properly considered whether the complaint could be read as asserting negligence causes of action to avoid the defendants' immunity argument.

After concluding that battery and false arrest can be based on either intentional or negligent conduct, the court considered whether the plaintiff's allegations of battery could be read as sounding in negligence. The court summarized the plaintiff's battery allegations: "(1) the defendants approached the plaintiff outside of an apartment building and accused him of trespassing; (2) the plaintiff told the defendants that he was not trespassing and that he lived in the building; (3) the defendants asked for identification; (4) the plaintiff told the [defendants] his identification was in the apartment; (5) the defendants grabbed and tased the plaintiff and attempted to pepper spray him; and (6) the defendants handcuffed the plaintiff." After noting that these allegations were supported by the plaintiff's deposition testimony, the court concluded: "Viewing the evidence in the light most favorable to the plaintiff, these allegations could support a claim that the [defendants] used more force than reasonably necessary to effectuate a lawful arrest. . . . The defendants have not provided evidence to support their claim that there are no genuine issues of material fact as to whether they are entitled to summary judgment under the immunity provided in § 52-557n (a) (2) as to the battery claim." (Citation omitted.)

Nevertheless, the court ultimately held that the defendants were entitled to summary judgment on the plaintiff's battery cause of action because the force they

Second, the plaintiff never suggested to the trial court that it should treat the defendants' motion for summary judgment as a motion to strike. Furthermore, when the court asked counsel for the plaintiff whether his causes of action sounded in negligence or intentional tort, counsel refused to answer. See footnote 7 of this opinion. Counsel also did not request an opportunity to amend his complaint either in response to the defendants' motion for summary judgment or in response to the court's inquiries. Instead, he argued that "we can revise the pleadings up until, you know, jury deliberations begin." The court then pointed out to counsel that such revisions could be done only with leave of the court, which counsel acknowledged. Nevertheless, counsel still did not request such leave to clarify the nature of the plaintiff's causes of action. Under these circumstances, the court

used in their altercation with the plaintiff was justified and not excessive. In reaching this conclusion, the court relied on General Statutes (Rev. to 2019) § 53a-22,[11] which sets forth certain defenses from criminal liability in connection with the use of force in making an arrest or preventing escape, and provides in relevant part: "(b) . . . [A] peace officer . . . is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." The court agreed with the defendants' argument that, because the plaintiff was resisting arrest, they were justified, pursuant to § 53a-22 (b), in using the force they did to subdue the plaintiff and, therefore, cannot have committed a battery on the plaintiff.

On appeal, the plaintiff argues that whether the force the defendants used was justified or excessive is a genuine issue of material fact that is for the jury to decide. The defendants argue that there is no factual dispute as to what occurred during the altercation, as it was all captured on the defendants' body cameras. According to the defendants, the undisputed evidence establishes that their use of force was objectively reasonable.[12]

had no obligation sua sponte to treat the defendants' motion for summary judgment as a motion to strike.

[11] Hereinafter, unless otherwise indicated, all references to § 53a-22 are to the 2019 revision of the statute.

[12] In their appellee brief, the defendants reiterate their argument that the plaintiff's causes of actions should be viewed as asserting only intentional tort claims, as to which the city, as the real party in interest, is immune. Nevertheless, the defendants have not argued that the trial court erred in rejecting their claim of intentional act immunity under § 52-557n because it construed the plaintiff's battery claim as sounding in negligence. They

Although we agree that, given the video evidence, there is no factual dispute as to the actions the defendants took during the altercation with the plaintiff, the question of whether their actions were justified is one

also did not raise this argument as an alternative ground for affirmance. In any event, we agree with the trial court that the plaintiff's battery count can be read as asserting a negligence cause of action.

Our Supreme Court has recognized repeatedly the tort of negligent battery. See, e.g., *Markey* v. *Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985) ("[i]n this state an actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently" (internal quotation marks omitted)); *Sansone* v. *Bechtel*, 180 Conn. 96, 99, 429 A.2d 820 (1980) ("We have long adhered to the rule that an unintentional trespass to the person, or assault and battery, if it be the direct and immediate consequence of a force exerted by the defendant wantonly, or imposed without the exercise by him of due care, would make him liable for the resulting injury. . . . This principle has been applied to the case of an unintended injury incident to disciplinary action taken by a teacher." (Citations omitted; internal quotation marks omitted.)); *Krause* v. *Bridgeport Hospital*, 169 Conn. 1, 9, 362 A.2d 802 (1975) ("[a]rguably, an intentional or negligent extension of physical contact beyond that consented to or needed properly to position a patient on an x-ray table and which results in injury may present an actionable battery"); *Russo* v. *Porga*, 141 Conn. 706, 708–709, 109 A.2d 585 (1954) ("An actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences. It may also be one committed negligently.").

Although the court has never expounded on the elements of negligent battery or explained whether or how a defendant who intentionally initiates contact with a plaintiff may be liable for negligent battery, our Supreme Court's decision in *Brown* v. *Robishaw*, 282 Conn. 628, 922 A.2d 1086 (2007), is instructive. In *Brown*, our Supreme Court addressed whether a defendant, in a case in which he was charged with negligently striking the plaintiff, was entitled to have the jury charged on his special defense of self-defense. Id., 629. The plaintiff argued that self-defense was not a proper defense to a negligence cause of action. Id., 636. The trial court agreed. See id., 632. Following a verdict for the plaintiff, the defendant appealed, arguing that the court erred in not instructing the jury on his claim of self-defense. Id. Our Supreme Court agreed with the defendant. Id., 633. In doing so, the court explained: "The facts of this case involve the intersection between negligent and intentional torts. The plaintiff alleged that the defendant had handled him negligently. In reality, however, the plaintiff claims that the defendant committed the intentional tort of assault, and that the defendant's response to the plaintiff's behavior . . . was unreasonable, and therefore, unjustified. *It is undisputed that the defendant intentionally threw or*

on which reasonable minds may differ and therefore must be resolved at trial. See *Amendola* v. *Geremia*, 21 Conn. App. 35, 37, 571 A.2d 131 ("A conclusion of negligence or freedom from negligence is ordinarily one of fact. . . . The trier must determine whether, in his own opinion, the defendant's actions meet the standards of conduct for one of reasonable prudence. . . . Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Citations omitted; internal quotation marks omitted.)), cert. denied, 215 Conn. 803, 574 A.2d 217 (1990).

We find instructive the decision of the United States District Court for the District of Connecticut in *Mehaylo* v. *Loris*, Docket No. 3:19-CV-2002 (VAB), 2022 WL 17082169 (D. Conn. November 18, 2022), aff'd, Docket Nos. 22-3162 (L) and 22-3163 (Con), 2024 WL 618761

*pushed the plaintiff down the stairs of the house. Therefore, for negligence still to be an issue, the question of whether the defendant's intentional conduct was unjustified remains paramount.* Indeed, the plaintiff himself notes that negligence 'remains a viable cause of action even in instances when self-defense is claimed: if a party who feels threatened reacts unreasonably he remains liable in negligence.' Thus, the self-defense analysis incorporates negligence principles, as the plaintiff correctly points out that *a party who overreacts to a perceived threat may be held liable in negligence if his actions are unreasonable in light of the circumstances. . . .* In order to determine if the party unreasonably overreacted so that he may be held liable for negligence, however, the fact finder first would have to be presented with the party's claim of self-defense. The jury in the present case was not provided with the opportunity to accept or to reject that defense." (Citation omitted; emphasis added; footnote omitted.) Id., 637–39.

In the present case, the defendants, although not explicitly arguing self-defense, argue that their intentional use of force was a justified response to the plaintiff's actions. Although there can be little question that the defendants acted intentionally when using force against the plaintiff, if the defendants acted unreasonably and overreacted to the plaintiff's perceived threat, they, like the defendant in *Brown*, may be held liable for acting negligently. On the other hand, if the defendants' use of force in response to the perceived threat was not just unreasonably excessive, but also was intended by the defendants to be excessive relative to the threat that they perceived, the city would be immune from liability under § 52-557n (a) (2) (A).

(2d Cir. February 14, 2024), on which the trial court relied in the present case to conclude that there were no genuine issues of material fact that the defendants' use of force was justified. In *Mehaylo*, the plaintiff sued the defendants, Officers Loris and Dominguez of the Shelton Police Department and Officer DeAngelo of the Derby Police Department, alleging excessive force in violation of the fourth amendment to the United States constitution and state law assault and battery in connection with her arrest. Id., *1. Her arrest occurred at her home after she left the scene of a motor vehicle accident in which she was involved. Id., *1–3. The court described the events of the arrest: "[The plaintiff] stated that once she knew it was the police that she knew she had to open the door. . . . She asked the officers outside her front door why they were at her house and answered questions about her involvement in the earlier car accident through the closed wood front door, which required her to raise her voice. . . . [The plaintiff] agreed to open the wood front door as long as she could speak to the officers with the screen storm door between them. . . .

"Once [the plaintiff] opened the front wood door, Officer DeAngelo opened the screen storm door, reached into [the plaintiff's] home, and grabbed [her] right arm to pull her out of her home and onto the front porch. . . . Once on the porch, Officer DeAngelo pushed [the plaintiff] against the wall to secure her with her arms behind her back. . . .

"Officer Loris then grabbed [the plaintiff's] left arm, and Officer Dominguez came to assist by holding [her] left arm while Officer Loris handcuffed her. . . . The three officers picked [the plaintiff] up and brought her from the front porch to a police car parked on the street. . . .

"While Officer Loris attempted to grab [the plaintiff's] legs so they could pick her up, she kicked backwards,

and her foot made contact with Officer Loris' groin. . . .

"Once the officers reached the police car, still carrying [the plaintiff], they threw her into the back of the car on her stomach with her hands handcuffed behind her back and her head hit the center console. . . .

"[The plaintiff] was charged with two counts of [a]ssault [of] a [p]ublic [s]afety [o]fficer and one count of [i]nterfering with a [p]olice [o]fficer." (Citations omitted.) Id., *2–3.

The defendants in *Mehaylo* moved for summary judgment, arguing, with respect to the plaintiff's excessive force claim, that their use of force was objectively reasonable and, with respect to the plaintiff's state law assault and battery claim, that "their use of force was justified." Id., *5. The District Court first addressed the defendants' argument that their use of force was objectively reasonable as a matter of law. Id., *5–9. In doing so, the court applied the legal test for such claims first set forth by the United States Supreme Court in *Graham* v. *Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). *Mehaylo* v. *Loris*, supra, 2022 WL 17082169, *6–7. "Determining whether the force used to effect a particular seizure is reasonable under the [f]ourth [a]mendment requires a careful balancing of the nature and quality of the intrusion on the individual's [f]ourth [a]mendment interests against the countervailing governmental interests at stake. . . . [The United States Supreme Court's] [f]ourth [a]mendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. . . . Because [t]he test of reasonableness under the [f]ourth [a]mendment is not capable of precise definition or mechanical application . . . however, its proper application requires careful

attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force . . . [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the [f]ourth [a]mendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

"As in other [f]ourth [a]mendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (Citations omitted; internal quotation marks omitted.) *Graham* v. *Connor*, supra, 490 U.S. 396–97.

The District Court in *Mehaylo* concluded that there were genuine issues of material fact as to whether the force the defendants used was reasonable, given that the crime the defendants were investigating was a misdemeanor, it was questionable whether the plaintiff posed a threat to the defendants, and a reasonable fact finder could conclude that the plaintiff would not have resisted arrest had the defendants not first grabbed the plaintiff. *Mehaylo* v. *Loris*, supra, 2022 WL 17082169, *6–7.

With respect to the plaintiff's assault and battery claim, the District Court first noted, as did the trial court in the present case, that, "[i]f . . . the officer's actions are justified [under § 53a-22 (b)], he is not liable in tort for assault or battery." (Internal quotation marks omitted.) Id., *11. The court nonetheless held that, because it had concluded that there were genuine issues of material fact regarding whether the defendants' use of force was reasonable, those issues also precluded summary judgment as to the state law assault and battery claim. Id. Essentially, the court equated the test for reasonableness under the fourth amendment for excessive use of force claims with the test for whether the use of force was justified under the state law assault and battery claim. See id. The United States Court of Appeals for the Second Circuit affirmed the judgment of the District Court in an unpublished opinion. *Mehaylo* v. *Loris*, Docket Nos. 22-3162 (L) and 22-3163 (Con), 2024 WL 618761, *2 (2d Cir. February 14, 2024).

In the present case, the defendants do not argue that there is any distinction between the fourth amendment's reasonableness inquiry for excessive use of force and whether their conduct was justified for purposes of a state law battery claim. In fact, they acknowledge in their appellee brief that the essential elements of a fourth amendment excessive use of force claim and a state assault and battery claim are nearly identical. See *Posr* v. *Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991). They also argue that applying the excessive use of force analysis to their conduct in this case leads to the conclusion that their conduct was objectively reasonable and justified as a matter of law. We are not persuaded.

Having conducted a plenary review of the evidence in the light most favorable to the plaintiff as the nonmoving party, we conclude that genuine issues of material fact similar to those in *Mehaylo* exist as to the force the defendants used during the altercation with the

plaintiff. First, criminal trespass in the third degree, the crime the defendants were investigating and with which the plaintiff was charged, is a class C misdemeanor punishable by a term of imprisonment not to exceed three months. See General Statutes §§ 53a-36 and 53a-109. Thus, as in *Mehaylo*, the defendants were investigating the commission of a possible misdemeanor. Second, the defendants' decision to approach the plaintiff was not prompted by any specific complaint about the plaintiff. Instead, the defendants confronted him because they did not recognize him as a tenant of the building. In light of these circumstances, a reasonable jury could conclude that, at the time that the defendants approached the plaintiff and initiated physical contact by grabbing his arms, the plaintiff did not pose any threat to their safety or the safety of anyone else. Such a conclusion would be supported by the fact that the plaintiff consented to a patdown search when requested by Dragoi. Finally, we cannot conclude, as a matter of law, that the force employed by the defendants during the course of the arrest was reasonable. Indeed, a jury could reasonably conclude that the defendants unjustifiably escalated the conflict with the plaintiff by attempting to forcibly twist his arms behind his back without provocation, causing the plaintiff to push them away or that the defendants acted unreasonably in attempting to physically remove the plaintiff from the front stoop after the arrival of his sister, who told the defendants that the plaintiff lived at the property with their mother. Similarly, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that the plaintiff was attempting to comply with Dragoi's commands that he step down from the stoop and sit on the ground when Dragoi pushed him back and then fired a Taser at him. The plaintiff is entitled to have a jury review the evidence and determine whether the defendants' use of force was justified

and reasonable. Consequently, the court improperly rendered summary judgment for the defendants on the first count of the complaint.

## II

The plaintiff also claims that the court erred in rendering summary judgment for the defendants on the second count of his complaint alleging false arrest because it treated the complaint as alleging only an intentional tort, as to which the city, as the real party in interest, was entitled to qualified immunity, and concluded that there was probable cause for the plaintiff's arrest. Assuming arguendo that the plaintiff properly pleaded negligent false arrest, we agree with the trial court that the undisputed facts establish that probable cause existed for his arrest, and we therefore affirm the court's judgment as to the second count on that basis.[13]

The following law is relevant to our analysis. "False arrest is the unlawful restraint by one person of the physical liberty of another. . . . To prevail on a claim of false arrest, the plaintiff must establish that the arrest was made without probable cause. . . . Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." (Citations omitted; internal quotation marks omitted.) *Campbell* v. *Porter*, 212 Conn. App. 377, 390, 275 A.3d 684 (2022). "Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to

---

[13] We note that the trial court's conclusion that the second count is barred by qualified immunity does not implicate the court's subject matter jurisdiction. See *Vejseli* v. *Pasha*, 282 Conn. 561, 572, 923 A.2d 688 (2007) ("whereas [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss . . . the doctrine of governmental immunity implicates no such interest" (citation omitted; internal quotation marks omitted)). Accordingly, we address the alternative basis for the court's judgment as to the false arrest cause of action.

believe that criminal activity has occurred. . . . It is a flexible common sense standard that does not require the police officer's belief to be correct or more likely true than false. . . . Probable cause for an arrest is based on the objective facts available to the officer at the time of arrest, not on the officer's subjective state of mind. . . . [W]hile probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . Indeed, proof of probable cause requires less than proof by a preponderance of the evidence. . . . The determination of whether probable cause exists . . . is made pursuant to a totality of circumstances test." (Citation omitted; internal quotation marks omitted.) Id., 390–91. "Whether the facts are sufficient to establish the lack of probable cause is a question ultimately to be determined by the court, but when the facts themselves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 252–53, 597 A.2d 807 (1991).

The existence of probable cause as to any offense defeats a false arrest claim, even if the basis for the arrest is unrelated to the crime being investigated or actually invoked at the time of the arrest. See *Devenpeck* v. *Alford*, 543 U.S. 146, 153–54, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004); see also *Jaegly* v. *Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting

officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge." (Emphasis in original.)). Consequently, we must determine whether, as a matter of law, the defendants had probable cause to arrest the plaintiff for the commission of any crime. We conclude that there are no genuine issues of material fact that the defendants had probable cause to arrest the plaintiff for interfering with an officer in violation of General Statutes § 53a-167a.[14]

Section 53a-167a (a) provides: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties." The plaintiff argues that there is a genuine issue of material fact as to whether there was probable cause to arrest him for interfering with an officer because the defendants were acting outside the scope of their role as police officers when they subjected him to a battery. The flaw in the plaintiff's argument is that he engaged in conduct that gave rise to probable cause of interfering with a police officer before the defendants exercised force on him. The defendants were investigating whether the plaintiff was trespassing at the property based on a persistent problem of individuals not permitted to be on the property

---

[14] In their appellee brief, the defendants argue that, in addition to the crimes with which the plaintiff was charged, namely, disorderly conduct, interfering with an officer, and trespass in the third degree, they also had probable cause to arrest the plaintiff for breach of the peace in violation of General Statutes § 53a-181. Because we conclude that the defendants had probable cause to arrest the plaintiff for interfering with an officer, we need not consider whether there also was probable cause to arrest him for other crimes. See, e.g., *Kee* v. *New York*, 12 F.4th 150, 158–59 (2d Cir. 2021) ("a police officer is not liable for a false arrest . . . if probable cause to arrest the plaintiff existed for *any* crime" (emphasis in original; internal quotation marks omitted)).

committing crimes there. When the defendants approached the plaintiff, he did not cooperate in their investigation by providing his name, identification, or any other information regarding his right to be on the property. He also refused to comply with Dragoi's directives to step away from the building.

Although the defendants never said that they were placing the plaintiff under arrest at that time, they had probable cause to do so. "[T]he broad language of § 53a-167a reflects a recognition by the legislature that, because police officers are confronted daily with a wide array of diverse and challenging scenarios, it would be impractical, if not impossible, to craft a statute that describes with precision exactly what obstructive conduct is proscribed. In other words, § 53a-167a necessarily was drafted expansively to encompass a wide range of conduct that may be deemed to impede or hinder a police officer in the discharge of his or her official duties." *State* v. *Aloi*, 280 Conn. 824, 837, 911 A.2d 1086 (2007); see id., 837, 840–41 (failure to provide police officer with name or identification constituted violation of § 53a-167a). The undisputed facts establish that there was probable cause for the defendants to believe that the plaintiff was impeding or hindering their official duties. Consequently, because the defendants had probable cause to arrest the plaintiff for a crime, his cause of action for false arrest necessarily fails.

The judgment is reversed with respect to the granting of the defendants' motion for summary judgment as to the count of the complaint alleging battery and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.